# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 07-CR-04-HE |
| | ) | |
| MICHAEL PATRICK DOWNES, | ) | |
| Defendant. | ) | |

## DEFENDANT DOWNES'
## SENTENCING MEMORANDUM
## & MITIGATION

## I.   OPENING COMMENTS

As defense attorneys, it is counsel's duty in preparing for sentencing not only to provide

assistance to the Court and the United States Probation Office during the Pre-Sentence Investigation,

but also to present a personal perspective on the defendant for the purpose of mitigating a sentence.

The contents of this combined sentencing mitigation memorandum and request for a variance or

deviation[1] from the U.S. Sentencing Guidelines  are not meant to duplicate the Pre-Sentence Report

and investigation but are meant to supplement it in a manner that will be consistent with the Court's

need in obtaining a complete perspective on the defendant prior to imposing sentence, pursuant to

Rule 32 of the Federal Rules of Criminal Procedure, Local Rule 42, 18 U.S.C. § 3661.

Title 18 U.S.C. § 3661 provides, "No limitation shall be placed upon the information

concerning the background, character, and conduct of a person convicted of an offense which a court

of the United States may receive and consider for the purpose of imposing an appropriate sentence."

> Legislative history of the Sentencing Reform Act of 1984 reflects that
> it was not Congress's aim to straight jacket a sentencing court,
> compelling it to impose sentences like a robot inside a sentencing

---

[1] To the extent the Defendant cites cases for a downward departure or "variance,"  we recognize that "departures" may not technically exist as a result of *Booker*.  Notwithstanding the advisory nature of the Guidelines, we submit that the Court may deviate or vary from the proposed punishment calculated by the U.S. Sentencing Guidelines.

guidelines' glass bubble, and preventing it from exercising discretion, flexibility, or independent judgment. The sentencing judge has an obligation to consider all the relevant factors in a case and to impose a sentence <u>outside the guidelines in an appropriate case</u>. The purpose of the U.S. Sentencing Guidelines is to provide a structure for evaluating the fairness and appropriateness of the sentence for an individual offender, not to eliminate the thoughtful imposition of individualized sentences. (emphasis added.)

*See* 13 CRIM. JUST. 51 (Spring 1998)(citing S.Rep. No. 225, 98th Cong., 2d Sess. 52 (1984), reprinted at 1994 U.S.C.C.A.N. 3182, 3235). Other statutory sections also give the district court direction in sentencing.

The results of our investigation for purposes of sentencing have revealed several important factors we wish the Court to consider in its decision as to the appropriate sentence for this Defendant. These factors include:

1.      Michael Patrick Downes is a 25 year-old young man who stands before the Court after entering a plea to one count of possession of child pornography,  18 U.S.C. § 2252A(a)(5).

2.      Michael Downes is not now and never has been a threat to the community nor a danger to society. Michael Downes is not now and never has been a sexual predator. We submit it is fair to state that the federal authorities do not believe that Mr. Downes currently poses a threat to himself or the general community because it agreed to the application for combined plea and sentencing.  It is also obvious that the government does not consider Mr. Downes a threat to the community because  it has taken almost two years **from the conclusion** of the investigation to the filing of charges.  It was represented to the Defendant by the federal agents that they had been investigating this for approximately one year (thus, this matter has been under investigation since approximately May 2004).  The Court in its January 23, 2007, Order recognized the "unique

2

circumstances" of this case and that "the defendant represents little or no threat to the community pending sentencing."

3.      Mr. Downes has voluntarily been involved in weekly therapy with Dr. Dennis Moran, a clinical psychologist, since his first contact with law enforcement and has made significant progress in his therapy.   *See in camera* Exhibit (to be provided *in camera* to protect health information pursuant to HIPAA).   Based on Dr. Moran's opinion, we also submit that Mr. Downes is not a threat of harm to himself or others – to quote Dr. Moran,  "taking lasting criminal action against Mr. Downes will not protect children from him, because he poses no danger to them."

4.      Counsel had Mr. Downes take a polygraph examination by Bill Brown, former FBI agent, who has extensive polygraph experience.   The inquiries included:

a.      Since your 18th birthday, have you had sexual contact with anyone under the age of 16 (the age of consent in Oklahoma)?  RESPONSE:   "No."

b.      Have you taken or solicited to take lewd photographs of anyone under the age of 18 for sexual gratification?  RESPONSE: "No."

c.      Have you had sexual contact with any under the age of 16 since June 1999 (his 18th birthday)?   RESPONSE: "No."

d.      Have you sought or solicited child pornography since your contact with Customs Agents?  RESPONSE: "No."

e.      Did you see in any way photos of pre-pubescent children for your sexual gratification? RESPONSE: "No."

3

No indication of deception was recorded; in other words, he passed the polygraph on all relevant questions. Attached with the "mitigation letters" is Bill Brown's e-mailed letter to Bill Price concerning the polygraph exam.

5.      Mr. Downes was also examined by Dr. Rick Kishur, a specially trained psychologist experienced in psycho-sexual examinations and sex offender treatment.  The examining psychologist stated to counsel that "prognosis for non-re-offending is good provided that Mr. Downes fully participate in counseling and complete his treatment plan."

6.      Mr. Downes' case is different from most other cases of possession of child pornography.  Mr. Downes was in his **early 20s** when the offense was committed. He was (and still remains) a physically immature young man who simply looked at images of teens of similar body type and physical immaturity.  Dr. Moran further states that  "Mr. Downes' actions are not those of one who represents a pedophilic threat, but rather they appear to be actions of an immature young man who advanced chronologically at a much more rapid pace than he did developmentally."

7.      There is no indication that he ever took any action harmful to anyone under age.  The government does not consider him to be a sexual predator, nor do Dr. Rick Kishur (psycho-sexual therapist who developed the Oklahoma Department of Corrections' sexual offender treatment program) and Dr. Dennis Moran (treating clinical psychologist).  Likewise, based on their own professional experiences, retired FBI Agent Bill Brown (the polygraph examiner) and Mr. Downes' counsel believe that he is no threat or harm to himself or others.

8.      Michael Downes is highly unlikely to ever again view any kind of pornography.  He has cooperated fully with law enforcement in the investigation of his crime, he has remained free since the investigation began in April 2005, he has voluntarily participated in weekly counseling with Dr.

4

Moran since April 2005, he has taken and passed a polygraph concerning the absence of pornography **of any kind** since he learned of the investigation in April 2005.

9.      Michael Downes is a first-time offender.

10.      He is not a violent person and harbors no ill feelings toward those involved in his prosecution.

11.      Michael Downes' attitude throughout the investigation of this criminal case, has been one of cooperation without regard to any "plea agreement" or other promises.

12.      Michael Downes is cognizant of the seriousness of the offenses for which he stands convicted.

13.      Michael Downes is a responsible and productive member of society with outstanding attributes of compassion, honesty, and trustworthiness. Many  defendants have some friends and associates that say generally good things about them. Counsel has rarely seen so many letters from individual who truly know the defendant well many over long  periods of time who give such specific examples of his character and integrity.

14.      Michael has expressed to counsel and his family and friends and former employer his **genuine remorse** and **shame** for his actions. Counsel has experienced very few clients  who so very much wanted and needed to unburden himself and who has taken very impressive steps to correct his mistakes and to seek treatment for the issues he faced.

15.      Michael Downes is not married, but he has a very supportive family including his parents and his two sisters and a younger brother.  In fact, his adult sister continues to live with him and would welcome him home after any period of incarceration that may be required.   All of his family has expressed love and support and have observed first-hand his remorse and shame and have

5

experienced his good attitude toward treatment and a positive change in his life. Accordingly, Michael Downes has a waiting, positive support system.

This memorandum is not intended to offer any excuses for Michael Downes' conduct or to show cause for him to be given undue leniency. Rather, the purpose of this memorandum is to identify additional facts for consideration when the Court determines the appropriate sentence.

## II.  PLEA AGREEMENT

Mr. Downes was charged in a single count information with violating 18 U.S.C. §2252A(a)(5) by possession child pornography. When approached by law enforcement in April 2005, Mr. Downes immediately provided the agents access to his computer, consented to a candid interview concerning the images, and cooperated in every manner possible. He maintained regular contact with the agents for months before engaging counsel.

Prior to the criminal information being filed, Mr. Downes resigned his position with the *Oklahoman* to avoid any undue embarrassment to the newspaper or its editors. He felt that continuing with his job there would create an internal conflict – not to mention placing his employer in an awkward position.

## III.  SENTENCING CONSIDERATIONS

Title 18 U.S.C. § 3553 provides for the imposition of sentence. Section 3553 (a) provides several factors to be considered by the court in imposing sentence:

> The court shall impose a sentence <u>sufficient but not greater than necessary</u>, to comply with the purposes set forth in paragraph two (2) of this subsection. The court, in determining the particular sentence to be imposed <u>shall consider</u> –
>
> > (1) the nature and circumstances of the offense and the history and characteristics of the defendant;

6

(2) the need for the sentence imposed –

A.   To reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

B.   To afford adequate deterrence to criminal conduct;

C.   To protect the public from further crimes of the defendant; and

D.   To provide the defendant needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

*See* 18 U.S.C. §3553 (emphasis added).  *See also* USSG, Ch. 1, Part A (2) "The Statutory Mission."

Under Title 18, United States Code  § 3582, imposition of a term of imprisonment is subject to the following limitation: in determining whether and to what extent imprisonment is appropriate based on the Section 3553(a) factors, the judge is required to "recogniz[e] that imprisonment is not an appropriate means of promoting correction and rehabilitation."  Counsel for defendant Michael Downes respectfully requests the Court to consider not only the Sentencing Guidelines but also the statutory mission and the considered judgment and discretion of the various prosecutors in reaching the plea agreement presented to the Court.

The U.S. Sentencing Commission expressly recognized 18 U.S.C. 3553 and concludes,

" . . . . [T]he Commission does not intend to limit the kinds of factors, whether or not mentioned anywhere else in the guidelines, that could constitute grounds for departure in an unusual case.

The Commission has adopted this departure policy for two reasons. First, it is difficult to prescribe a single set of guidelines that encompasses the vast range of human conduct potentially relevant to a sentencing decision. . . .

Second, the Commission believes that despite the courts'' legal freedom to depart from the guidelines, they will not do so very often. . . .

> It is important to note that the guidelines refer to two different kinds of departure. The first involves instances in which the guidelines provide specific guidance for departure by analogy or by other numerical or non-numerical suggestions. The Commission intends such suggestions as policy guidance for the courts. The Commission expects that most departures will reflect the suggestions and that the courts of appeals may prove more likely to find departures "unreasonable" where they fall outside suggested levels.
>
> A second type of departure will remain unguided. It may rest upon grounds referred to in Chapter Five, Part K (Departures) or on grounds not mentioned in the guidelines. While Chapter Five, Part K lists factors that the Commission believes may constitute grounds for departure, the list is not exhaustive. The Commission recognizes that there may be other grounds for departure that are not mentioned; it also believes there may be cases in which a departure outside suggested levels is warranted. . . .

USSG, Ch. 1, Part A (4)(b).

Respectfully, counsel prays that the court consider Mr. Downes as a candidate for straight probation or, alternatively, for home confinement or a combination of incarceration and home confinement. Council recognizes that probation and/or home confinement are not generally recommended under the United States Sentencing Guidelines and that if the Guidelines were still mandatory that Michael Downes' Level 23, Category I, would fall into a range of punishment of 46-57 months. This would place his in Zone D, which is not eligible for probation. Notwithstanding the advisory Guidelines, counsel submits that this is a very unique circumstance and that the Court in its discretion may determine that probation or home confinement is an appropriate sentence for this defendant.

Obviously, courts must take into consideration both rehabilitation and punishment. Respectfully, it is submitted that Michael Downes has been rehabilitated. He has shown his

rehabilitation by his openness with the federal agents, his long-term (2-year) on-going treatment, passing the polygraph concerning the issues outlined above in Part I, ¶4.

Respectfully, Michael Downes' punishment also began **long before** the law enforcement investigation.  In fact, he sought treatment with Dr. Moran prior to learning of the investigation and since the investigation has fully disclosed his issues and explored them with Dr. Moran.  Michael Downes issues are as much "psychological" as "legal" issues.  Respectfully, his ailment centered on his own negative body image, beginning at age 14, when he was the age of the models in the images collected from his computer.  See Part I, ¶6.

This is one of the very rare occasions where the perpetrator of the crime has in fact "punished" himself as much as the Court could punish him.     **Mr. Downes has been and continues to be punished by his own conscience for his  wrongdoings**.  His heart knows the full weight and pain he has caused his family and friends, the Court and society in general.  His rehabilitation does not come solely  from an external source; rather, it comes from an internal personal and spiritual desire and love for his family and friends who have supported his through this ordeal.   In Michael Downes' situation, living with the damage to himself and his family and friends  will be a long and painful experience.   Truly, he will  carry  this experience the rest of his life, long after any period of incarceration has expired.

## IV.    FACTORS FOR VARIANCE CONSIDERATION   USSG §5K2.0

Although the U.S. Sentencing Guidelines are now advisory only, the United States Supreme Court case of *Koon v. United States*, 518 U.S. 81, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996), empowered federal judges to be creative in finding grounds for a downward departure.  Effective

November 1, 1994, the Sentencing Commission added a paragraph to the Commentary to USSG §

5K2.0 authorizing a downward departure based on a combination of factors:

> The Commission does not foreclose the possibility of an extraordinary
> case that, because of a combination of such characteristics or
> circumstances, differs significantly from the "heartland" cases covered
> by the guidelines in a way that is important to the statutory purposes
> of sentencing, even though none of the characteristics or
> circumstances individually distinguishes the case.  (Emphasis added.)

However, even prior to the adoption of this amendment, several circuits had authorized downward

departures based on a combination of factors, none of which standing alone would have justified a

departure.[2]  Since the amendment and post-*Koon*, the combination of factors downward departure

or "variance" has been credited with approval.  *See United States v. Rioux*, 97 F.3d 648 (2d Cir.

1996)(upholding downward departure based on physical condition and charitable acts**).**  We ask the

Court to consider the following factors in varying or departing downward from the advisory

Guidelines to satisfy justice.

After *Booker***,** the fundamental consideration for the district court in sentencing is the directive

of Congress that the district court "shall impose a sentence **sufficient, *but not greater than***

***necessary***, to comply with [the purposes of sentencing]" (emphasis added). 18 U.S.C. § 3553(a);

*United States v. Ministro-Tapia* 470 F.3d 137 (2nd Cir. 2006);  *United States v. Yopp***,** 453 F.3d 770,

773 (6th Cir. 2006) ("the twenty-four month sentence...is substantively plainly unreasonable because

it is "greater than necessary to comply with the purposes set forth in [ § 3553(a)(2) ]" where only 12

---

[2] *See United States v. Browser*, 941 F.2d 1019, 1020-1025 (10th Cir. 1991)(upholding
departure from career offender guideline on "unique combination of factors," none of which
would have warranted departures by themselves); *United States v. Sklar*, 920 F.2d 107, 117 (1st
Cir. 1990)(the convergence of factors that might be "inadequate to warrant departure when taken
in insolation, may . . . in combination suffice to remove a case from the heartland . . .").

months sentence necessary to assure treatment in 500 hour drug abuse program. "**Many times we have emphasized that a district court's mandate is to impose a sentence sufficient, but not greater than necessary to comply with the purposes set forth in [§3553(a)(2)(1)]")**.. *United States v. Rodriguez-Rodriguez*, 441 F.3d 767 (9th Cir. 2006). This is the "primary directive" of the sentencing statute. *Ranum*, 353 F.Supp. 2d at 986. *United States v. Ferguson*, 456 F.3d 660 (6th Cir. 2006) (The 'parsimony provision' [is the]  guidepost for sentencing decisions post-*Booker*."); *United States v. Cull*  446 F.Supp.2d 961 (E.D. Wisc. 2006) ("This is the so-called parsimony provision, which requires the court to impose the least severe sentence necessary to satisfy the four purposes of sentencing – punishment , deterrence, protection of the public and rehabilitation."); *United States v. Husein*  478 F.3d 318 (6th Cir. 2007) ("The plain import of *Booker* is that a 1-day, below-the-Guidelines sentence, no less than a 7,300-day, above-the-Guidelines sentence, is now a viable sentence for a district court to impose so long as it is authorized by statute and reasonable within the meaning of 18 U.S.C. § 3553(a)").

This directive to the district court is not to be confused with the test <u>on appeal</u> as to whether the district court's sentence is "reasonable." *United States v. Collington*, 461 F.3d 805 (6th Cir. 2006) ("a district court's mandate is to impose 'a sentence sufficient, but not greater than necessary, to comply with the purposes' of section 3553(a)(2). Reasonableness is the *appellate* standard of review in judging whether a district court has accomplished its task");  *United States v. Foreman*,  436 F.3d 638, 644 n.1 (6th Cir. 2006 ) ("a district court's job is not to impose a 'reasonable' sentence. Rather, a district court's mandate is to impose 'a sentence sufficient, but not greater than necessary, to comply with the purposes' of section 3553(a)(2). Reasonableness is the *appellate* standard of review in judging whether a district court has accomplished its task").

11

**Because the guidelines are not binding, "courts need not justify a sentence outside of them by citing factors that take the case outside the 'heartland.'"** *United States v. Ranum*, 353 F.Supp.2d 984, 987 (E.D.Wis.,2005) (emphasis added); *United States v. Williams*, 435 F.3d 1350 (11th Cir. 2006) ("The district court's sentence [below the guidelines] does not have to be justified as a downward departure. After *Booker*, the sentencing Guidelines are advisory, and the sentencing court, in its own discretion, can move below the advisory Guidelines range without a motion for downward departure as long as the resulting sentence is reasonable"). Under the new advisory Guidelines scheme, "district courts have a freer hand in determining sentences." *United States v. Trujillo-Terrazas,* 405 F.3d 814, 819 (10th Cir.2005). Thus, "while the Guidelines still exert gravitational pull on all sentencing decisions ... district courts now have more discretion to tailor sentences to the individual circumstances of a defendant." *Id.* Further, the sentencing factors set forth in § 3553(a), "which the mandatory application of the Guidelines made dormant, have a new vitality in channeling the exercise of sentencing discretion." *Id*; *United States v. Menyweather*, 431 F.3d 692, 700 (9th Cir. 2005)("In the 'broader appraisal,' available to district courts after *Booker,* courts can now ⋯ have the discretion to weigh a multitude of mitigating and aggravating factors that existed at the time of mandatory Guidelines sentencing, but were deemed 'not ordinarily relevant,' such as age, education and vocational skills, mental and emotional conditions, employment record, and family ties and responsibilities"); *United States v. Gorsuch,* 404 F.3d 543, 548 (1st Cir.2005)("in the post-*Booker* world, the sentencing guidelines are only advisory and the district court may justify a sentence below the guideline level based upon a broader appraisal"); *United States v. Castro-Suarez*, 425 F.3d 430, 436 (7th Cir. 2005) (a non-guideline sentence need not be supported by unusual circumstances, as a pre-*Booker* departure would; rather, all that is necessary "is an adequate statement of the judge's

reasons, consistent with § 3553(a), for thinking the sentence is appropriate for the particular defendant").

**1.     THE ADVISORY GUIDELINE SENTENCE IS TOO HARSH OR IS "GREATER THAN NECESSARY."**

"**Our sentences are too long, our sentences are too severe, our sentences are too harsh... [and because there are so few pardons] there is no compassion in the system. There's no mercy in the system.**" *See* Testimony Of Justice Anthony Kennedy before the Senate Judiciary Committee February 14, 2007 in response to Senator Whitehouse, video link accessible at Professor Berman's Sentencing Law and Policy Blog of Feb. 15, 2007); July 9, 2006 Speech of Justice Anthony Kennedy at the Ninth Circuit Judicial Conference ("I think the guidelines are far too severe. . .,") (found at http://talkleft.com/new_archives/015288.html); *see also* August 9, 2003 Speech of Justice Kennedy at the ABA Annual Meeting (available at http://www.abanews.org/kencomm/amkspeech03.html) ("**Our resources are misspent, our punishments too severe; our sentences too long... the sentencing guidelines are responsible in part for the increased terms....[and they] should be revised downward**"); *United States v. Khan*, 325 F.Supp. 218, 227 (E.D.N.Y. 2004) (same); "The U.S. rate of incarceration is the highest in the world." Fact Sheet, National Council on Crime and Delinquency (November, 2006), found at http://www.nccd-crc.org/nccd/pubs/2006nov_factsheet_incarceration.pdf; *United States v. Ranum*, 353 F.Supp.2d 984, 985 n.1  (E.D.Wis.2005) (quoting Justice Kennedy's statement that "our punishments [are] too severe, our sentences too long").

Specifically relevant here is the recognition that in some child pornography cases, the punishments can be too harsh. *United States  v. Wachowiak,*  412 F.Supp.2d 958 (E.D. Wisc.  2006) (where 24 year old music student convicted of possessing child pornography,  and where he is in

treatment and low risk of recidivism, and strong support from family, court imposes 70 months where guideline range of 121-150 months greater than necessary to comply with purposes of sentencing); *see generally United States v. Adelson* 441 F.Supp.2d 506 (SDNY 2006) (in securities fraud case where guidelines call for life sentence, court imposes 42 months, noting that "where, as here, the calculations under the guidelines have so run amok that they are patently absurd on their face, a Court is forced to place greater reliance on the more general considerations set forth in section 3553(a), as carefully applied to the particular circumstances of the case and of the human being who will bear the consequences).

### 2. EVEN THOUGH MITIGATING FACTOR DOES NOT QUALIFY FOR TRADITIONAL DOWNWARD DEPARTURE, OR THE DEFENSE IS PROHIBITED FROM SEEKING DEPARTURE, COURT MAY STILL USE FACTOR TO SENTENCE BELOW ADVISORY RANGE.

While the Court may find that some of the bases for variance or departure set forth in this Sentencing Memorandum are not subject to consideration under the Guidelines, it should be noted that since the *Booker* decision, courts must recognize their discretion in determining the appropriate sentence. *United States v. Menyweather* 431 F.3d 692 (C.A.9 2005)(in embezzlement of $500,000, downward departure of 8 levels not abuse because "In the 'broader appraisal,' available to district courts after *Booker*, courts can now ⋯ have the discretion to weigh a multitude of mitigating and aggravating factors that existed at the time of mandatory Guidelines sentencing, but were deemed 'not ordinarily relevant'"); *United States v. Spigner* 416 F.3d 708, 712 (8th Cir. 2005) (where defendant convicted of sales of more than 50 grams of crack, base level 34, and where defense agreed not to ask for downward departures on basis of health, 5H1.4, case remanded because district court can still impose a sentence lower than the suggested because after *Booker* the new advisory sentencing scheme permits broader considerations of sentencing implications. Moreover, section 3553(a) requires

that a district court consider the need to provide medical care in the most effective manner when sentencing a defendant).

### 3.     CRIMINAL CONDUCT ATYPICAL AND OUTSIDE THE HEARTLAND OF THE GUIDELINE.

Michael Downes is not the typical possessor of child pornography.    He is physically immature.  He began looking at this type of material at age 14, when he was the same age as the people in the images.  He looked at the images because of his own lack of development.  Additionally, Mr. Downes (1) has recognized his "personal issues," (2) has sought treatment from a psychologist, (3) has continued in weekly treatment for more than two years, (4)  has passed a polygraph exam (*see* attached) that questioned whether he had ever touched or photographed a child in a sexual manner and passed on the question whether he had obtained or viewed any such material since his contact with federal law enforcement in April/May 2005, and (5) has maintained employment.  He has also cooperated fully with federal agents.

When a case is outside of the heartland, the court may appropriately vary from the guidelines. This case is outside of the heartland.  *United States v Polito*, (5th Cir. Jan. 31, 2007 No. 06-30133) 2007 WL 313463  (unpub.) (where defendant convicted of possession of child pornography and guidelines 27-33 months, district court's **sentence of probation with one year house arrest** reasonable in part because defendant's conduct in the four years since the crime—receiving mental health treatment, maintaining employment,  law abiding life—"made him atypical of many convicted of possessing child pornography");  *United States  v. Parish*, 308 F.3d 1025 (9th Cir. 2002) (eight level departure granted in child porn case because defendant's possession of photographs, which were automatically downloaded when he viewed the documents, was outside the heartland of much more serious crimes that typical pornographers engage in, according to psychiatrist).  Similarly, many of

the images on Mr. Downes' computer were down-loaded automatically, which explains why not all of the images were of adolescents.

### 4.    MR. DOWNES IS A FIRST-TIME OFFENDER

The guideline sentence fails to take into account the Congressional directive that the "guidelines reflect the general appropriateness of imposing a sentence **other than imprisonment** in cases in which the defendant is a first offender who has not been convicted of a crime of violence or an otherwise serious offense." 28 U.S.C. § 994(j). *United States v Polito*, (5th Cir. Jan. 31, 2007 No. 06-30133) 2007 WL 313463 (unpub.) (where defendant convicted of possession of child pornography and guidelines 27-33 months, district court's sentence of probation with one year house arrest reasonable in part because first offense).

### 5.    LENGTH OF TIME UNTIL FIRST CRIME.

Departure warranted because guidelines fail to consider length of time defendant refrains from commission of first crime, here until age 23. *United States  v. Ward*, 814 F.Supp.  23 (E.D.Va. 1993). Mr. DOWNES is 25-years old. Other than this crime, he has lived a law-abiding life, which should be considered by the Court.

### 6.    PRISON TIME MORE SIGNIFICANT FOR FIRST OFFENDER SO BELOW GUIDELINE SENTENCE MORE  JUST

Michael Downes has never committed a crime before this situation, and he has never been incarcerated. The "prison experience" will expose Mr. Downes to a world totally foreign to him. Such exposure will substantially deter him from any future misconduct. *United States v. Baker*, 445 F.3d 987 (7th Cir. 2006)  (in distribution of child porn case court affirms below guideline sentence of 78 months (guidelines called for 108) noting that  "significant is the district court's finding that a

prison term would mean more to Mr. Baker than to a defendant who previously had been imprisoned. Consideration of this factor is consistent with § 3553's directive that the sentence reflect the need for "just punishment," *id.* § 3553(a)(2)(A), and "adequate deterrence," *id.* § 3553(a)(2)(B)").

*See also*, *United States v. Qualls*, 373 F. Supp. 2d 873, 877 (E.D. Wis. 2005) ("Generally, a lesser period of imprisonment is required to deter a defendant not previously subject to lengthy incarceration than is necessary to deter a defendant who has already served serious time yet continues to re-offend"). *See also*, *United States v. Willis* --- F.Supp.2d ----, 2007 WL 926148 (E.D.Wis. March 28, 2007) (in drug case where guideline range was 120 months but statutory maximum was 60 months, sentence of one year and one day sufficient in part because sentence "sentence provided a substantial punishment for someone like defendant, who had never before been to jail and who engaged in no violence or dealing herself"). *United States v. Cull*, 446 F.Supp.2d 961 (E.D. Wisc. 2006) (in marijuana case where guidelines 10 to 14 months, though defendant "not entitled to departure under pre-*Booker* standards" and where "nothing extraordinary about the case or the defendant," court imposes 2 months jail with 4 months home confinement as a condition of supervised release imposed because "Defendant had never been confined before, so [2 months jail time] was sufficient to impress upon him the seriousness of the offense and to deter others under similar circumstances"); *United States v. Qualls*, 373 F. Supp. 2d 873, 877 (E.D. Wis. 2005) ("Generally, a lesser period of imprisonment is required to deter a defendant not previously subject to lengthy incarceration than is necessary to deter a defendant who has already served serious time yet continues to re-offend").

17

### 7.    DEFENDANT'S OTHERWISE OUTSTANDING CHARACTER

Attached to this Sentencing Memorandum are approximately 37 letters outlining   Michael Downes' character and reputation.   These letters show the Court the "real" Michael Downes that is known to those around him.   Rarely does defense counsel have the opportunity to show the Court such outstanding character traits and exhibition of his good character (notwithstanding the crime charged).   **These letters simply show a young man who has made a terrible mistake, yet a young man who is worthy of significant consideration of his future**.   *United States v. Wachowiak*,  412 F.Supp.2d 958  (E.D. Wisc. 2006), held that where 24 year old music student convicted of possessing child pornography,  and guidelines 121-151 months,  and where he is in treatment and low risk of recidivism, and strong support from family, court imposes 70 months in part because "the guidelines failed to consider defendant's otherwise outstanding character, as depicted in the many supportive letters . . . . While § 3553(a)(1) requires the court to consider the character of the defendant, the guidelines account only for criminal history. In cases where the defendant led an otherwise praiseworthy life, the court should consider a sentence below the advisory range. *See, e.g.*, *United States v. Page*, No. 04-CR-106, 2005 U.S. Dist. LEXIS 19152,at 12 (E.D. Wis. Aug. 25, 2005); *United States v. Ranum*, 353 F. Supp. 2d 984, 986 (E.D. Wis. 2005)." (Emphasis added).

### 8.    RUIN OF REPUTATION

There can be no dispute that Mr. Downes' conviction for possession of child pornography will ruin his reputation.  He has resigned his position with the local newspaper, he has had to tell family and friends of this shameful chapter in his life.  Others who know him have heard rumors or will likely read of this situation in the local news.  Forever, Michael Downes will carry a cloud of suspicion just because of the nature of the offense – long after having completed any sentence of incarceration.

18

*United States v. Adelson,* 441 F.Supp.2d 506 (SDNY 2006) (in securities fraud where guidelines called for life, court imposes 42 months noting that factor of specific deterrence accounted for because,  "With his reputation ruined by his conviction, it was extremely unlikely that he would ever involve himself in future misconduct.").   Regardless of the sentence imposed, Michael Downes' reputation is substantially ruined; he will always be labeled a felon; he will always be registered as a sex offender; he will be forced to find a new type of work, likely at substantially lower compensation; and his very movements and living conditions will be scrutinized likely for the rest of his life.

### 9.     THE DEFENDANT IS LAW ABIDING CITIZEN WHO JUST DID A STUPID THING

Michael DOWNES is and has been a generally law-abiding citizen.  His actions here are simply outside of his general character, are more in line with a "personality disorder" and his own "body image" concerns (which is being addressed in counseling therapy), and was simply a stupid act on his behalf without considering the full consequences that could follow.  While defense counsel recognizes that participation in a "stupid" act is not generally grounds for variance, at least one sentencing court has considered that factor, and we ask the Court to consider it here.  *United States v. Hadash*  408 F.3d 1080, 1084 (8th Cir. 2005) (where defendant pled guilty of possession stolen firearms, and guidelines 12 to 18 months, district court reasonably departed downward by six levels because the district court said the defendant was simply "a law abiding citizen, who [did] an incredibly dumb thing" and said that the defendant "was not the type of defendant the guidelines section was designed to punish.").

**10.    A SENTENCE TOO SEVERE WOULD IMPAIR REHABILITATION OR TREATMENT**.

It has been recognized by district and circuit courts that a sentence may impair rehabilitation or treatment.  We suggest that that is the case with Mr. Downes.  He has been in treatment for two years since his first contact with federal law enforcement.  He has made outstanding progress (*see* letter from Dr. Moran).  The Guidelines calculation here is a range of approximately 46-57 months, which respectfully for this defendant is simply too much time to serve.    The Tenth Circuit has expressly recognized that severing counseling can be detrimental to the defendant.  *United States v. Jones*, 158 F.3d 492 (10th Cir. 1998) (where defendant pled guilty to possession of a firearm by a prohibited person, the district court did not abuse its discretion in departing downward by three levels when, as one of eleven factors, it considered that imprisonment would sever the defendant's access to rehabilitative counseling – one of the purposes of sentencing is "to provide the defendant with needed education or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. §3553(a)(2)(D)).

Specifically in child pornography cases, the courts have considered this issue:   *United States v. Halsema*  2006 WL 1229005, *2 (11th Cir. 2006) (unpub.) (in child porn case where guidelines 57-71 months, **district court's sentence of 24 months proper** where "district court relied on expert testimony that a longer sentence would negatively affect Halsema's rehabilitation."); *United States v. Polito*, (5th Cir. Jan. 31, 2007 No. 06-30133) 2007 WL 313463 (unpub.) (where defendant convicted of possession of child pornography and guidelines 27-33 months, district court's sentence of probation with one year house arrest reasonable in part because "a term of imprisonment would interrupt Polito's mental health treatment").  *United States  v. Wachowiak*  412 F.Supp.2d 958  (E.D.  Wisc.

2006) (in possession of porn case, where guidelines 120 20 151 months, below guideline sentence of 70 months imposed in part because "according to all of the experts, a sentence exceeding ten years would have harmed defendant's progress in treatment. *See* § 3553(a)(2)(D)..... a sentence approaching ten years would only have delayed the treatment available within the BOP [because of admission criteria at FCI Butner], **in addition to disrupting defendant's treatment in the community** . . .[further] space in the Butner program is limited, and many inmates never get in. Thus, defendant could be denied treatment for the entire prison sentence").

In other crimes (not child porn) situations, the courts have also considered that the sentence can be too long.  *United States v. Collington*, 461 F.3d 805  (6th Cir. 2006) (in drugs and gun case where guidelines 188 -235, sentence of 120 months affirmed in part because "a 120 month sentence is sufficient enough to reflect the crimes committed while allowing for the possibility that Collington may reform and after his release from prison, when he is in his mid-thirties, may go on to a productive life in society"); s*ee United States v. Pallowick,*  364 F.Supp.2d 923 (E.D. Wisc. 2005) (where Defendant convicted of six armed bank robberies and advisory guidelines were 70-87 months, court imposes sentence of 46 months because no one was hurt and defendant made no direct threats of harm, defendant's only prior offense was burglary committed shortly before robberies, his severe mental illness of major depressive disorder and anxiety disorder played major role in offenses, after arrest he completed in-patient treatment, enrolled in counseling, and took medication, he was not dangerous and unlikely to re-offend.  **"I further conclude[] that sending defendant to prison for a lengthy period of time would not aid in his rehabilitation and might actually hinder the progress he made in counseling**. *See* 18 U.S.C. § 3553(a)(2)(D)"); *cf. United States v. Duran*, 37 F.3d 557, 560-61 & n. 3 (9th Cir. 1994) ("once imprisonment is selected as the means of

punishment," the court may consider "correctional treatment" and "rehabilitation" to determine the length of sentence.  In this case, these considerations justified a longer sentence.  Court notes that "a sentence of not less than 12 nor more than 30 months permits the court to commit a defendant to an Intensive Confinement Center."  In addition, a sentence of 18 to 24 months allowed inmate to enter, complete, and receive "fullest possible benefit under prison drug abuse program").

## 11.     THE DEFENDANT IS YOUTHFUL AND IMMATURE MENTAL AGE.

Michael Downes is 25-years old today.  At the time of the offense, he was 23-years old.  Notwithstanding his chronological age, his body developed slowly.  He had significant body image problems into his twenties because of his underdevelopment.    He has sought treatment for these issues, but that issue contributed heavily to his interest in the subject matter that has put him before this Court for sentencing.  *United States v. Polito*, (5th Cir. Jan. 31, 2007 No. 06-30133) 2007 WL 313463  (unpub.) (where defendant convicted of possession of child pornography and guidelines 27-33 months, district court's sentence of probation with one year house arrest reasonable in part because defendant was 18 at time of the offense "and very immature...and his age and mental condition prohibited him from acting rationally");  *See Roper v. Simmons*, 125  S.Ct. 1183 (2005) ("today our society views juveniles, in the words Atkins used respecting the mentally retarded, as "categorically less culpable than the average criminal . . . [a] lack of maturity and an underdeveloped sense of responsibility are found in youth more often than in adults and are more understandable among the young. These qualities often result in impetuous and ill-considered actions and decisions. . . . The susceptibility of juveniles to immature and irresponsible behavior means "their irresponsible conduct is not as morally reprehensible as that of an adult . . . . The relevance of youth as a mitigating

factor derives from the fact that the signature qualities of youth are transient; as individuals mature, the impetuousness and recklessness that may dominate in younger years can subside").

While Mr. Downes is not a juvenile and is not 18 years old, these two cases are still applicable to his situation and should be considered by the Court in determining sentence.   *United States v. Allen*, 250 F.Supp.2d 317 (SDNY 2003)(where defendant convicted of drugs and guns, defendant entitled to 8 level departure from 80 months to 30 months because his mental immaturity-even though at 21 he behaves like 14 year old and psychological problems and mild retardation take case out of heartland of drug and gun cases).

**12.    GOOD EMPLOYMENT HISTORY & EDUCATION HISTORY.**

Michael Downes has worked since he was 14 years old.  He has consistently maintained employment, has paid his way through college, has paid all of his debts (having only a car payment), has purchased a home, etc.   He has done these things at his young age – showing his drive and desire for success (not prison).   These are factors that the Court may consider in determining sentence. *United States v. Baker*,  445 F.3d 987, 992 (7th Cir. 2006) (in distribution of porn case where guideline called for 110 months, 78 month sentence affirmed: defendant's "lack of a criminal history, his relatively young age, his religious background and his **history of both employment and higher education**  . . . coincides with the sentencing factors specified in § 3553(a) ['the nature and circumstances of the offense and the history and characteristics of the defendant'"] so below guideline sentence in dist. of porn case affirmed").

The Tenth Circuit has recognized this factor in certain cases. *United States v. Jones*, 158 F.3d 492 (10th Cir. 1998) (where defendant pled guilty to possession of a firearm by a prohibited person, the district court did not abuse its discretion in departing downward by three levels  when, as one of

eleven factors, it considered the defendant's "long impressive work history ...where good jobs are scarce." Even though under §5H1.5 ordinarily a discouraged basis, here unusual). Other courts have as well:   *United States v.  Higgins*, 967 F.2d 841 (3d Cir. 1992) (**young age and stable employment will justify a downward departure**   if "extraordinary"; remanded to see if judge realized he had power); *United States v. Alba*, 933 F.2d 1117 (2d Cir. 1991) (long-standing employment at two jobs); *United States  v. Jagmohan*, 909 F.2d 61 (2d Cir. 1990) (exceptional employment history and nature of the crime); *United States  v. Big Crow*, 898 F.2d 1326, 1331-32 (8th Cir. 1990) (excellent employment record); *United States  v. Ragan*, 952 F.2d 1049 (8th Cir. 1992) (defendant stopped using drugs a year before his indictment, maintained steady employment, and offered to cooperate-departure affirmed where government did not object at sentencing).

### 13.    MICHAEL DOWNES HAS SHOWN EXTREME REMORSE.

Michael Downes has expressed extreme remorse.  He has worked for two years in therapy. He has attempted to cooperate with federal authorities, but he has not information that would lead to the conviction of others (because he is law-abiding).  He has stayed in touch with the federal officers, he has done all that he can to atone for his very serious misconduct with law enforcement, with his family, with his friends, and with himself (in therapy).   *United States v. Fagan*, 162 F.3d 1280, 1284-85 (10th Cir. 1998)(because guidelines do not expressly forbid the departure, under rationale of *Koon*, court may downward depart where defendant showed great remorse "to an exceptional degree" even though defendant already received adjustment for acceptance of responsibility); *United States v. Jaroszenko*, 92 F.3d 486 (7th Cir. 1996).

### 14.   THE DEFENDANT MANIFESTED "SUPER" ACCEPTANCE" OF RESPONSIBILITY

Michael Downes is a low risk for re-offending.  (*See* Dr. Moran's letter).  He has sought treatment.  He has followed through with his treatment.  He now sees the very real harm to children – even from someone just viewing the materials (not participating in its manufacture or distribution). Mr. Downes sought this treatment on his own – not at the request of his lawyer or his parents.   He didn't tell his parents of the federal criminal investigation until just before his charge was filed (***months after*** the investigation was known to him).  He didn't hire counsel ***until months after*** the investigation was disclosed to him.  He arranged for therapy and has regularly attended all sessions – all on his own without any promises of leniency.  Michael Downes did this for his own good and for society's.

This type of rehabilitation is appropriate for consideration of variance from the Guidelines since *Booker*.  *United States v. Wachowiak* 412 F.Supp.2d 958  (E.D. Wisc.  2006) (where 24 year old music student convicted of possessing child pornography . . . , court imposes 70 months where guideline range of 121-150 months in part because three-level reduction under USSG § 3E1.1 for acceptance "**did not sufficiently account for defendant's sincere expression of remorse and demonstration of insight into his condition and the harm he was causing children**").

Here, Michael Downes voluntarily sought treatment for his addictions.  He has followed through with treatment on a weekly basis for now two years.  He quit viewing pornography on the spot and has not viewed it since and has completely overcome any desire for it.  Mr. Downes has made every possible effort to right his wrong – thus showing his super acceptance.  *United States v. Davis*, 797 F. Supp. 672 (D.C.N.Ind. 1992) (8-level downward departure proper where defendant

make $775,000 restitution voluntarily); *United States v. Ziegler*, 835 F. Supp. 1335 (D. Kan. 1993) (downward departure justified for complete acceptance of responsibility **exhibited by extraordinary drug rehabilitation** in that defendant had smoked 20 marijuana cigarettes a day for 20 years and stopped).

The two-level reduction under USSG 3E1.1(a) and the additional one-level reduction pursuant to USSG §3E1.1(b) simply does not account for extreme remorse or the type of post-investigation rehabilitation that Michael Downes has undertaken in this case. *United States v. Milne*, 384 F. Supp. 2d 1309, 1312 (E.D. Wis. 2005) (explaining that the 3 level reduction is ordinarily granted to defendants who timely plead guilty, and the guidelines do not otherwise account for greater expressions of remorse). Again, this reflects not only a reduced risk of re-offending but also positive character development.")

Without a plea agreement, Michael Downes offered to assist law enforcement. His offers were made weekly with the agents because of his remorse – **_even before_** Michael had engaged the services of a lawyer. He continued to offer his services after hiring counsel, but the government simply could not risk using him undercover in any current investigations. *See generally, United States v. Rothberg*, 222 F. Supp. 2d 1009 (N.D. Ill. 2002) (where defendant pled to copy right infringement without plea bargain, and where, despite the government's refusal to file motion for downward departure under USSG § 5K1.1, defendant continued to cooperate with the government, and where, in doing so, he put himself at risk of a significant detriment: without a plea agreement, there was nothing to prevent the government from using the information he provided against him at sentencing, defendant's efforts show acceptance of responsibility that is outside the heartland of §3E1.1, with other factors, warranted two level additional departure).

15.    **POST-OFFENSE, POST-CONVICTION, AND POST-SENTENCING REHABILITATION**.

"Since *Booker*, the Guidelines are no longer a straightjacket binding courts to artificially created and cruel paradoxes of sentencing, by insisting not only on rehabilitation, but on extraordinary rehabilitation." *United States v. Hawkins*, 380 F.Supp.2d 143 (EDNY 2005).    Post-conviction and/or post sentencing rehabilitation are appropriate considerations since *Booker*.    *United States v. Rhodes*, 145 F.3d 1375 (D.C.Cir. 1998) (post-conviction rehabilitation grounds for departure if "exceptional degree" of rehabilitation shown – in light of *Koon*.  The Eighth Circuit held that post-offense rehabilitation effort in child porn case may justify downward departure where defendant has undergone eight months of sex offender and chemical dependency treatment with a high probability of success. *United States v. Kapitzke*, 130 F.3d 820 (8th Cir. 1997). *United States v. Rosado*, 254 F.Supp.2d 316, 321 (S.D.N.Y.2003) ("Since rehabilitation may not be a basis for incarceration but must be considered as a basis for sentencing, Congress must have anticipated that sentencing judges would use their authority, in appropriate cases, to reduce a defendant's sentence to permit him to continue his rehabilitation in the most effective manner").   Mr. Downes has undergone two years (24 months) of treatment – with great success. *See* Dr. Moran's letter.  Although Dr. Moran's clinic may not be naitonally recognized, Michael Downes has completed  24  months of therapy with a great prognosis. *See  United States  v. Shasky,* 939 F. Supp. 695 (D.Neb. 1996) (departing downward in child porn case where defendant entered a nationally recognized sex offender program and had an excellent long-term prognosis with minimum risk of re-offending).

*United States v Polito*, (5th Cir. Jan. 31, 2007 No. 06-30133) 2007 WL 313463  (unpub.) (where 24 year old defendant convicted of possession of child pornography and sentenced to

probation with one year of house arrest was reasonable in part because . . . **since the offense the defendant has conducted himself in a very positive way receiving mental health treatment, maintaining employment and avoiding legal problems** and since the offense he married returned to college and graduate with honors);  *United States v. Wachowiak*, 412 F.Supp.2d 958 (E.D. Wisc. 2006) (where 24 year old music student convicted of possessing child pornography . . ., court imposes 70 months where guideline range of 121-150 in part because the **advisory guidelines "failed to account for defendant's sincere efforts in treatment, which not only reduced his chances of re-offending but also demonstrated a strength of character in confronting his problems**");  *United States v. Hawkins*, 380 F.Supp.2d 143 (EDNY 2005) (in insurance fraud case, where guidelines 12 to 18 months, sentence of probation imposed. The fact that defendant engaged in further criminal activity while she was in the process of rehabilitation does not preclude a finding of rehabilitation—which "often means turning a bad life into a decent, honorable, law-abiding life" or when "a relatively decent person falls into bad conduct, but immediately and permanently repents." *Id. See also, United States v. Seethaler*, 2000 WL 1373670, *2 (N.D.N.Y. Sept. 19, 2000)(unpub.) (downward departure from 46 to 30 months for post-offense rehabilitation where Defendant had completely resolved the sexual fetish and had no continuing urges to search for pornography on the Internet or in any other situation and where Defendant appears to have re-established himself in his family and in his occupational pursuits).

### 16.     STRONG FAMILY SUPPORT THAT AIDS REHABILITATION.

As can be seen from the many letters provided in mitigation of punishment, Michael Downes has a strong support network of family and friends and therapist that will aid in his rehabilitation.  This is an appropriate factor for consideration under the circumstances here.  *United States v. Wachowiak*

412 F.Supp.2d 958  (E.D. Wisc.  2006) (in possession of porn case, where guidelines 120 20 151 months, below guideline sentence of 70 months imposed in part because "the guidelines failed to account for the strong family support defendant enjoyed, which would aid in his rehabilitation and re-integration into the community. Because defendant's family and friends have not shunned him despite learning of his crime, he will likely not feel compelled to remain secretive if tempted to re-offend. Rather, he will seek help and support").

### 17.    DEFENDANT    ALREADY    PUNISHED    BY    COLLATERAL CONSEQUENCES.

Michael Downes earned a degree in journalism from the University of Oklahoma and was employed as a professional photo-journalist with the *Oklahoman*.  He also contributed photos to news organizations nationwide, such as the *Wall Street Journal*, *Los Angeles Times*,  *New York Times*, Seattle *Times*, AP Wire, CNN, and other news media outlets.   Since just before the charges were filed, Mr. Downes resigned his position with the Oklahoman to avoid any embarrassment to OPUBCO or the *Oklahoman's* editor, Ed Kelly.   Mr. Downes other employment involves teaching consumers how to use Mac computers.  Because of the nature of the charges – notwithstanding that he never photographed any children in any sexually charged manner – Mr. Downes will likely never work in the photography industry or in photo-journalism.  Additionally, he will be forced to register as a sex offender, which will limit his employment and residence options for his lifetime. The U.S. Probation Office has also recommended strict supervision of Mr. Downes use of the Internet – even for employment purposes – which would likely cause Mr. Downes to not be employed in the computer industry.   Accordingly, he will face collateral punishment not generally suffered by others

convicted of most common law crimes, drug crimes, white collar crimes, or even typical crimes of violence.

Punishment for collateral consequences has been considered as a ground for variance from the Guidelines, and we submit that it is appropriate for consideration here.   *See, United States v. Wachowiak*,  412 F.Supp.2d 958  (E.D. Wisc.  2006) (where 24 year old music student convicted of possessing child pornography, and where he is in treatment and low risk of recidivism, and strong support from family and community, court imposes 70 months where guideline range of 121-150 months **in part because "the guidelines failed to account for the significant collateral consequences defendant suffered as a result of his conviction**. His future career as a teacher was ruined, and he was compelled to resign as piano teacher of children and as a church musician. He will also be forced to live with the stigma of being a convicted sex offender).

### 18.    DEFENDANT'S MOTIVE NOT VENAL

Here, Mr. Downes fascination with the illegal images was started because of his own lack of physical development.   While Mr. Downes does not offer his slow development as a defense, he simply advises the Court that his interest began as an innocuous interest or curiosity.   He was not seeking the images for sexual gratification.   Mr. Downes understands now the gravity of his offense, and he has undertaken to correct his "thinking" processes and has already eliminated forever any interest in the subject material.

*Wisconsin v. Mitchell,*   508 U.S. 476, 485 (1993) ("The defendant's motive for committing the offense is one important factor [in determining the sentence]. *See* 1 W. LeFave & A. Scott, Substantive Criminal Law § 3.6(b), p. 324 (1986) ("Motives are most relevant when the trial judge

sets the defendant's sentence, and it is not uncommon for a defendant to receive a minimum sentence

because he was acting with good motives, or a rather high sentence because of his bad motives")).

### 19.   DEFENDANT SUBJECT TO ABUSE IN PRISON OR SOLITARY CONFINEMENT.

Michael Downes is charged with and stands convicted of possession of child pornography.

This is one of the few crimes that even prisoners find heinous and atrocious.  Prisoners often take

"justice" into their own hands in these cases.[3]  The Court may also take judicial notice of Mr. Downes

small stature – 5'11" and  weighing approximately 125 pounds. (*See* PSR at ¶38).   He clearly is not

physically strong enough to protect himself from would-be attackers.   Accordingly, Mr. Downes will

likely be the target of threats of harm or physical abuse if word leaks out of the nature of his crime.

Even if not "isolated" in general, he will likely be isolated to confinement with others of like crime

– and not with the general population.  *United States v. Volpe*, 78 F.Supp.2d 76, 89 (E.D.N.Y.1999)

("Volpe II") (Defendant entitled to two-level departure because "[t]he extraordinary notoriety of this

case and the degree of general opprobrium  toward Volpe . . . , coupled with [his] status as a police

officer," left him "unusually susceptible to abuse in prison" and defendant may have to spend most

his time in segregation); *United States  v. Bruder*, 103 F.Supp.2d 155, 182 (E.D.N.Y. 2000).

While there is no evidence of the "high profile" nature of Mr. Downes' case or evidence that

he will be subjected to segregation of isolation from others, these are factors to consider.   These

---

[3]  The undersigned counsel represented Charles Willingham in *State v. Willingham*, Case No.CF-03-357, Grady County.  Mr. Willingham was convicted at jury trial and sentenced to imprisionment in the State Department of Corrections.  Immediately after his appeal was completed, Mr. Willingham was assaulted and murdered in an Oklahoma prison because he was a "child molester" – having been convicted of sexually assaulting his 15 year-old step daughter – and because he  remained in the general population

factors have been considered in extreme cases.  While Mr. Downes case is similar to others facing the same charge, this factor should be considered in the cumulative effect as one of many sentencing factors.  *See generally, United States  v. Noriega*, 40 F.Supp.2d 1378 (S.D.Fla. 1999) (judge reduces old-law sentence from 40 to 30 years in part because of harsh nature of incarceration – "There is little question that [segregated confinement] is a more difficult  type of confinement than in general population. For some, the consequences of such deprivation can be serious."); *see McClary v. Kelly*, 4 F.Supp.2d. 195, 207  (W.D.N.Y. 1998) ("a conclusion however, that prolonged isolation from social and environmental stimulation increases the risk of developing mental illness does not strike this court as rocket science.  Social science and clinical literature have consistently reported that when human beings are subjected to social isolation and reduced environmental stimulation, they may deteriorate mentally and in some cases develop psychiatric disturbances (citing cases)."  *See also*, "*The Eighth Amendment and Psychological Implications of Solitary Confinement*," 21 Law and Psychology Review, Spring 1997, p. 271; "*Solitary Confinement, Legal and Psychological Considerations*," 15 New England Journal on Criminal and Civil Confinement, 301, Summer 1989).

## 20.   A DELAY BETWEEN OFFENSE AND CHARGE GIVES COMMUNITY TRACK RECORD OF GOOD BEHAVIOR TO MEASURE REHABILITATION.

Here, Michael Downes had his initial contact with federal law enforcement in April/May 2005. The federal authorities were aware of the alleged illegal activity for up to one year prior to making contact with Mr. Downes.   Since becoming aware of the criminal investigation in May 2005 – now two years later – Mr. Downes comes before the Court for sentencing.  It is clear from the PSR and from the absence of any allegations of misconduct that Mr. Downes has led an exemplary life since his contact with the federal agents.  Likewise, the glowing letters from Mr. Downes family and friends

shows his post-investigation rehabilitation.   Accordingly, we ask the Court to consider his post-investigation conduct – which we submit is an appropriate factor for consideration after *Booker* – in determining the need for Mr. Downes' deterrence from future crimes and/or his  rehabilitation..

See,  *United States v Polito,* (5th Cir. Jan. 31, 2007 No. 06-30133) 2007 WL 313463 (unpub.) (where defendant convicted of possession of child pornography and guidelines 27-33 months, and where offense occurred 6 years before sentencing, district court's sentence of probation with one year house arrest reasonable in part because the six years until conviction and the five years of probation will "give the community a record of 11 years of Polito's conduct" to measure post offense rehabilitation").

Further, courts have considered the delay between the charge and the misconduct or the delay between the misconduct and sentencing in determining the deterrent value.   *See, Coleman v. Balkcom*, 451 U.S. 949, 952 (1981) (Stevens, J., concurring in denial of cert.) ("The deterrent value of any punishment is, of course, related to the promptness with which it is inflicted."); *United States v. Gregory*, 322 F.3d 1157 (9th Cir. 2003) **(**where defendant pled guilty to money laundering and two years later was indicted for drugs crimes related to the money laundering, dismissal of indictment improper, but district court on remand may depart to impose sentence that would have been imposed had both crimes been brought at same time. A departure "may be appropriate to mitigate the effects of any loss of grouping,");  *United States  v. Cornielle*, 171 F.3d 748, 754 (2d Cir. 1999) (among other things, four-year pre-indictment delay in perjury prosecution warranted one-level downward departure).

21.     **THE GOOD IN THE DEFENDANT'S LIFE CAN MITIGATE THE BAD**

Michael Patrick Downes has lived a good life: law-abiding (except for this crime), compassionate, kind, gentle, caring, etc. (*See* letters).  The good in his life should be recognized and to a degree should off-set his misconduct.  *See,  United States v. Adelson*  441 F.Supp.2d 506 (SDNY 2006)  (in securities fraud case, where guidelines call for life sentence, court imposes 42 month sentence in part because of the defendant's past integrity and good deeds. **"But, surely, if ever a man is to receive credit for the good he has done, and his immediate misconduct assessed in the context of his overall life hitherto, it should be at the moment of his sentencing, when his very future hangs in the balance**.  This elementary principle of weighing the good with the bad, which is basic to all the great religions, moral philosophies, and systems of justice, was plainly part of what Congress had in mind when it directed courts to consider, as a necessary sentencing factor, "the history and characteristics of the defendant").  (Emphasis added).

22.     **MERCY FROM THE COURT**

**"**Our sentences are too long, our sentences are too severe, our sentences are too harsh... [and because there are so few pardons] **there is no compassion in the system. There's no mercy in the system."**), *see*  Testimony Of Justice Anthony Kennedy before the Senate Judiciary Committee February 14, 2007 in response to Senator Whitehouse,  *video link* accessible at Professor Berman's Sentencing Law and Policy Blog of Feb. 15, 2007); Justice Kennedy 's ABA speech of 2003 ("**A country which is secure in its institutions, confident in its laws should not be ashamed of the concept of mercy.** As the greatest of poets has said 'mercy is the mightiest in the mightiest. It becomes the throned monarch better than his crown'").   Mercy should be considered here.  Mr. Downes is a 25- year-old young man – still with a promising future because of his age, education and

general good character.   Prior to *Booker*, mercy may not have been a subject of consideration, but today, the Court may consider anything within the purview of §3553.

In a case involving child pornography, the district court *sua sponte* reduced the punishment range.  *See, United States v. Tanasi*, 2003 WL 328303 (S.D.N.Y. Feb. 6, 2003)(unpub.) (defendant convicted of possessing and sending child porn by computer to undercover agent pretending to be 13 year-old; court departs from 33-41 month guideline to 9 months because of diminished capacity given "obsessive and compulsive behavior" and could not control his conduct and where **no evidence defendant was a sexual predator or ever was involved sexually with a child**).   There is no evidence that Michael Downes was ever involved with a child.   In fact, he passed a polygraph by former FBI Agent Bill Brown on this very issue.   Further, there is evidence (*see* Dr. Moran's letter) concerning Michael Downes' psychological history.   Accordingly, we submit that it is appropriate to consider this factor in varying from the Guidelines.

## V.   <u>CONCLUSION</u>

Defendant Michael Patrick Downes and his counsel recognize the seriousness of the offense for which he has pled guilty and has  been convicted.   This memorandum is not intended in any way to denigrate or diminish the seriousness of the crime.   Nor is it an indictment of the U.S. SENTENCING GUIDELINES.   Rather, we present this memo as authority for the Court to exercise sentencing discretion pursuant to the statutory considerations of §3553.   Clearly we have shown the Court some examples of departures/variance from the Guidelines.   Counsel recognizes that these are the extreme variances from the Guidelines; however, Michael Downes represents one of the few defendants worthy of an extreme variance – even for this crime.   The bases for variance provided here, respectfully, authorize the Court to exercise sentencing discretion.

35

Mr. Downes' counsel, his friends and family believe that she has enormous potential and is capable of contributing to society outside of prison.  Based on the totality of the circumstances and the unique character of this defendant, it is submitted that justice would be served by varying from the Guidelines and sentencing Mr. Downes to probation or a split sentence of prison and house arrest.

The defense recognizes the need for punishment, deterrence, protection of the public and rehabilitation.  Mr. Downes has been punished by the delay in charging after his confession in April 2005, by the requirement that he will have to register as a sex offender, by any restrictions placed on him by this Court (either during a period of incarceration and/or supervised release),  and more importantly by his own conscience.  His post-investigation and his psychological treatment show his rehabilitation. The labeling as a sex offender and felon deter him from any future misconduct, as does the limitations on his employment and residence options. Mr. Downes has passed a polygraph examination concerning any interest or use of illegal child pornography or even child erotica (which may not be illegal).  Mr. Downes is simply not a threat to the community.

Notwithstanding the need for punishment, deterrence, protection of the public and rehabilitation in any given criminal case,  counsel makes this unique request to  allow Mr. Downes a rare opportunity to correct his mistakes and to re-integrate into society immediately so that he may continue his therapy program, impact the lives around him in a positive way as he has done most of his adolescent and adult lives and in the two years since his contact with federal authorities, and to tell his story so that others won't make the same mistake– thus emphasizing the rehabilitation factor. If not granted probation, the defense prays that the Court consider a very significant variance from the Guideline range of punishment (now at 46-57 months representing Level 23, Category I).   The

need for punishment, deterrence, protection of the public and rehabilitation can all be accomplished by sentencing outside of the heartland of the Guidelines.

## VI.  PRAYER

WHEREFORE, defendant prays:

1.     That the Court vary from the Guidelines to a punishment significantly less than the Guideline range of 46-57 months;

2.     That the Court sentence the Defendant to (1) straight probation, (2) home confinement,  or (3) a split sentence with equal time incarcerated and equal time on home confinement.

3.     That the Court recommend that, if eligible, any incarceration which may be ordered shall be served at the prison camp at FCI El Reno in El Reno, Oklahoma; FCI Seagoville, Seagoville, TX; FMC Ft. Worth, Ft. Worth, Texas, or any other appropriate federal prison camp nearest to his home in Oklahoma City.

4.     That the Court grant self-surrender to the designated facility.

Respectfully Submitted,


   *s/ Robert L. Wyatt, IV*
Robert L. Wyatt, IV, OBA No. 13154
WYATT LAW OFFICE
501 N. Walker Avenue, Suite 110
P.O. Box 1947
Oklahoma City, OK 73101
(405) 234-5500 Telephone
(405) 232-4556 Fax
E-mail: bobwyatt@wyattlaw.com

                                    _____*s/ William S. Price*_____
                                    William S. Price, OBA No.  7308
                                    PHILLIPS McFALL, McCAFFREY,
                                        McVAY & MURRAH, PC
                                    Corporate Tower, 13th Floor
                                    101 N. Robinson
                                    Oklahoma City, OK 73102
                                    (405) 235-4100 telephone
                                    (405) 235-4133  Fax
                                    WSPrice@phillipsmcfall.com
                                    *Attorneys for MICHAEL DOWNES*


## CERTIFICATE OF SERVICE

        I hereby certify that on May 22, 2007,  I electronically transmitted the attached document to the Clerk of the Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants: James F. Robinson, Asst. U.S. Attorney and William S. Price (co-counsel for Mr. Downes).


                                    _____*s/ Robert L. Wyatt, IV*_____
                                    Robert L. Wyatt, IV


RLW
Sentencing Memo Downes May 22 (3-15PM).wpd

# INDEX TO
# MITIGATION LETTERS

James A. Beckel (Wyatt Law Office typed the hand-written letter verbatim) . . . . . . . . . . . . . . . 1

Blake N. Behrens . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Carl Brandvold . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Jordan Bradford . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Michael Bratcher . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Jenni Carlson . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Lauren Cavin . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Amy K. Downes . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Diane K. Downes . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Kristin Downes . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Patrick J. Downes . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Laura Eckel . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Schelley Christine Fehrenbach . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Janet E. Henderson . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Elizabeth Herman . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

Carole Kelley . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

Ed Kelley . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

Elanna Killackey . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

Regan Killackey . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

Steven Lackmeyer . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

Angela Lee . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

Dennis Leehan . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

Ja'Rena Lunsford . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

Stephanie L. Marrs, RN . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

Annia N. Morris . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

Ann Oswalt . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

Jacquie Reaves (Wyatt Law Office typed the hand-written letter verbatim) . . . . . . . . . . . . . . 40

Ryan J. Reaves . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

Clint Roberson . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43

Robert E. Simmons . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45

John R. Smalley . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 47

Marilyn Henderson Smalley (two letters – one from 1999) . . . . . . . . . . . . . . . . . . . . . . . . 49

Bill Waugh . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 51

Tyler David Wear . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 53

Katheryn Jenson White . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 54

Kellen Wiggins . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 55

Jerry L. And Nancy R. Williams . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 57

Bill Brown, Polygraph Examiner . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 59

James A. Beckel
1708 Songbird Lane
Midwest City, OK 73130


28 April 2007


The Honorable Joe Heaton
c/o Robert L. Wyatt
Wyatt Law Office
Oklahoma City, OK 73101

      RE:    Sentencing of Michael P. Downes
               Case No. 07-CR-04-HE

Dear Judge Heaton:

     I am writing in regard to the above referenced case, wishing to speak as a character witness for the defendant, Michael Patrick Downes, and hoping that you might consider this letter during the sentencing and punishment phase of his trial.

     I know Michael as a professional colleague, as we worked together as staff photographers for The Oklahoman newspaper for the past four years.  I came to know him as one of the most likeable, trustworthy and reliable members of our staff, always carrying out his duties in a responsible and professional manner. During that time, I was fortunate to have developed a personal friendship with Michael.  He has a personality that draws people to him; I would describe him as affable, always a friendly and pleasant member of any social gathering.  Michael has even been an invited guest in my home a number of times.  He has been, and will remain, a person who is welcome in my home, regardless of the outcome of this case.  I have three children, ages 16, 18 and 21, and I have never had any reason to feel uncomfortable or uneasy when he was around any of them, at any time.  His behavior was never anything less than gentlemanly, and I would characterize his demeanor as above reproach.

     I must tell you that I was dumbfounded when I learned of this charge against Michael a few weeks ago; I had never witnessed any improper or untoward behavior in this regard from him.

     Michael came to me, and in what must have been an embarrassing and humiliating experience for him, explained to me his current legal predicament.  I thanked him for his honesty and candor and I told him he had my total support.  Michael expressed remorse and a deep regret for his past behavior and told me he was sorry for any embarrassment this has created for his family, friends, as well as his former colleagues at The Oklahoman.  I accepted his apology, knowing it was sincere.

     I understand, and agree, that Michael must now accept responsibility for his actions and for justice to be served, he must accept a punishment.

Page 2

It is that degree of punishment I am asking you to consider when you make the final determination in this case.

For all the aforementioned reasons, I urge you not to excuse Michael's actions, but rather to exercise leniency when you administer sentencing.

There is no question that as a young man, Michael has a great deal of positive contributions he can make to his community, and to society, in general. I am confident he has learned from past mistakes and is now prepared and ready to accept his punishment and make amends, moving forward to conduct himself in a manner that is reflective of the decent and good person he is. I hope you will agree.

I thank you for your service on the bench and for your time in considering my thoughts.

Sincerely,


s/James A. Beckel

April 26th, 2007
The Honorable Joe Heaton
c/o Robert L. Wyatt
WYATT LAW OFFICE
P.O. Box 1947
Oklahoma City, OK  73101

RE: Sentencing of Michael Patrick Downes
United States v. Michael Patrick Downes, Case No. 07-CR-04-HE

Dear Judge Heaton:

In regards to Michael's sentencing, I am writing to plead your lenience on him, for Michael is a good person that committed an act completely out of character. One that has torn him apart, both before and after he was accused.

Michael Downes has been my friend since we were in sixth grade in 1993. I would be very hard pressed to find a more reliable, outgoing person. I know for a fact that if I ever truly needed something, and Michael could help, he would. And he would do so without question. While we were in High School, Michael was a natural leader in student council and on several occasions helped people become more than they once were. I trust him with the most intimate details of my life.

Michael told me of his situation with a heavy heart and true remorse. He has been in therapy for two years now to combat his problems. Michael says that he is now currently in the best mental health he has been in since I met fourteen years ago. He shows that he truly regrets his acts and has conquered his demons. He is asking for a second chance in order to continue his healing.

He has gone out of his way to respectfully distance himself from the company he had worked for for several years to spare them the controversy of this trial. He chose to honorably confess to his loved ones his deepest darkest sins and save us from finding out through rumor and hearsay. This is an extremely difficult time for Michael and he has thus far acted honorably with the confession of his guilt and his earnest desire to correct his mistakes.

I truly pray he will be allowed to undergo further psychological treatment and be able to receive the support from his loving family and his loyal friends that are so important to his betterment. With your most minimum sentencing I can hope to personally continue to help and hold accountable my friend Michael Downes as he redeems himself. He brings so much joy to so many peoples lives with his kind heart and his good acts that he can continue. While I am only one man I believe surely he would help the community more through public service and counseling than by serving a sentence inside a penitentiary.

Most sincerely,

Blake N. Behrens

The Honorable Joe Heaton
c/o Robert L. Wyatt
Wyatt Law Office
P.O. Box 1947
Oklahoma City, Oklahoma 73101
**Date 5/22/07**

Re: Sentencing of Michael Patrick Downes
*United States v. Michael Patrick Downes, Case No. 07-CR-04-HE*

3218 South Birmingham Ave.
Tulsa, Oklahoma 74105

April 27, 2007

Dear Judge Heaton,

Michael has been a close friend of mine since our sophomore year of high school and our friendship since then has only gotten stronger. Michael was apart of "our group". Our group consisted of people of all different talents and backgrounds. People that typically in a high school situation might not befriend one another. As a group we would hang out for hours on end, watching movies, eating and of course sharing many many laughs. Our close nit circle truly cared for one another, and still does. Michael especially was caring towards all his friends. In high school it was at his house where we would usually end up hanging out, it was at his house where we would have our famous "mixed grill" BBQ's, it was his house where we would all meet at before we did something. After our high school days we all went our separate ways as we moved on to college. I went to OSU and Michael went to OU. Although we didn't see each other as often as we had in the past, we would still stay in touch so that when we reunited it felt like no time had elapsed. As I said before, Michael is apart of the group. Though I may not know every last detail about the case that has been brought up against my friend, it is my hope that Michael be given a second chance.

Michael, as I stated before, is truly a great friend. His sense of humor is sharp and quick. When hanging out with Michael you are always guaranteed to have a great time. He is also one of the smartest people that I know, which made it really frustrating playing Trivial Pursuit with the guy. Michael is also apart of a very loving family. His parents, two sisters and little brother all support him completely. Whereas most families might fall apart because of situations similar to this, Michael's family only strengthens and grows closer. I believe having that strong family bond, that he obviously has with his family, will be his rock and his strength. What Michael is accused of is not something anyone would ever expect to hear. I also do not believe that he has a malicious heart that can be compared to some of these other people you hear about on the news that go and

do terrible things. What Michael did was wrong but it was also a mistake. The internet is full of garbage that can screw with your head, anyone can tell you that, and he happened to trip across a site that he should not have looked at, but he did. He made that mistake and has accepted full responsibility for the seriousness of this crime.

3218 South Birmingham Ave.
Tulsa, Oklahoma 74105

April 27, 2007

What I am hoping for is that Michael receive the minimum amount of punishment for his crime. For the last two years he has dealt with feelings of guilt, shame and embarrassment brought on by these events. Michael has been seeking help and has confessed his sin to his friends and family so with a community of accountability behind him and because of what he has gone through in this process I do not believe added jail time would benefit his case. Michael is on the path of healing and I would think it would be better for Michael to be among people that love him rather than in a jail where love is absent. Again, I realize what Michael did was wrong and in our minds we will never forget about the crime that Michael is guilty of, but we also know who the true Michael is. Michael loves life, he's extremely talented, has a wonderful family, a huge supportive circle of friends and can contribute so much to our community. Please, give Michael a second chance.

Sincerely,

*Carl Brandvold*

Carl Brandvold

Jordan Bradford
11905 Peppertree Place
OKC, OK 73120
April 26, 2007

The Honorable Joe Heaton
c/o Robert L. Wyatt
WYATT LAW OFFICE
P.O. Box 1947
Oklahoma City, OK 73101

RE:  Sentencing of Michael Patrick Downes
*United States v. Michael Patrick Downes*, Case No. 07-CR-04-HE

Dear Judge Heaton,

My name is Jordan Bradford. I have known Michael Downes for nearly 20 years. We first met at age 6, in developmental first grade. In the years since, he has been one of my closest and most loyal friends. I am writing in regards to his upcoming sentencing. While I recognize that I am not a party to all the facts of the case, I do feel that I am qualified to offer an opinion regarding his character.

*Michael Downes is one of the most loyal, most caring, and most devoted friends I have ever had.* Whenever I have needed him, for any reason, he has been quick to respond with the utmost in friendship and assistance. I have always known Michael to be an honest, kind individual. When I received news of this situation, I was shocked beyond words. These actions were so far out of character for him, I was unable to respond immediately to the news.

As to his impending punishment, I understand that it is inevitable, and I do not disagree that people must be held accountable for their actions. However, with regards to this particular situation, I believe that Michael has already suffered much because of the choices he made in the past. I also believe that he has begun to take the necessary steps to affect positive changes in his life, and that he will continue to do so going forward. Michael is an incredibly intelligent person, who realizes that changes must be made in order for him to live a healthy life. I feel that his actions to this point, specifically his decision to seek professional counseling, reflect this.

While I understand that all actions must come with consequences, I must plead for leniency on my friend's behalf. Michael Downes is a wonderful friend, a person with a generous spirit, and someone who still has much to offer to his friends and family.

Respectfully,

Jordan Bradford
4/26/2007

4/26/07

# Michael Bratcher

3125 NW 12 St.
Oklahoma City, OK 73107
(405) 408-1781  -  bratcher@gmail.com


April 26, 2007


The Honorable Joe Heaton
c/o Robert L. Wyatt
Wyatt Law Office
P.O. Box 1947
Oklahoma City, OK 73101


Dear Judge Heaton,

I have known Michael Downes for about eight years, both in a personal and professional setting. We attended the University of Oklahoma at the same time and were graduates of the Gaylord College of Journalism. Then, as it would happen, we both obtained jobs at *The Oklahoman*, the state's largest newspaper. Today I am writing to you concerning the sentencing and punishment phase of his trial.

Though I admit I am not familiar with all of the details of his case, I do know that Michael is a sincere individual. He treats his friends, family and colleagues with respect, and I have known him to often go out of his way to help someone in need. There have been times when I've needed someone to talk to about a problem in my life, and Michael has stepped up to the plate, so to speak, to listen and offer his advice. I know many of his other friends, too, would agree with that sentiment.

I know that Michael has sought counseling and treatment for the act at hand, and I truly believe these desires are all behind him. I believe Michael is a strong person and trustworthy. When he tells me something, I have no reason to believe he is being dishonest with me.  It's not his character to lie, and I know with all of my heart that he has happily and easily worked with those in positions of authority to move past this circumstance. I believe the time he has spent in counseling has opened his eyes to the nature of his problem, and he is a different man today.

Michael and I have a lot in common – we were both journalism students at OU and, as I mentioned, worked together at *The Oklahoman*, he as a staff photographer and myself as a reporter. I often interacted with him in school and in a professional setting. I've always respected his work and know that he is driven to be successful in life, whether it is getting that perfect photo during a newspaper assignment or something as simple as contributing to his neighborhood as a valued homeowner.  Judge Heaton, I respectfully ask that

Michael receive a minimum punishment during the sentencing phase of this case. I know Michael and his family have suffered quite a bit from this ordeal, and I believe he has a lot to offer society, his family and friends in the future. I would be happy to visit further with you, if you have any questions.


Sincerely,

Michael Bratcher
April 26, 2007

Jenni Carlson
2133 Huntleigh Drive
The Village, OK 73120

April 28, 2007

The Honorable Joe Heaton
c/o Robert L. Wyatt
WYATT LAW OFFICE
P.O. Box 1947
Oklahoma City, OK 73101

RE:    Sentencing of Michael Patrick Downes
       *United States v. Michael Patrick Downes*, Case No. 07-CR-04-HE

Dear Judge Heaton:

I am writing this letter in support of Michael Downes. We first became acquainted about five years ago when Michael was hired as a photographer at *The Oklahoman*, where I have worked as a sports columnist since 1999. We became even better friends during the past few years when I began dating Ryan Reaves, who has been Michael's closest friend since high school. Even though I might not be privy to all the facts and details of Michael's case, I am writing concerning the sentencing and punishment phase of his trial.

Michael was always a guy with whom I enjoyed being on an assignment. He showed a willingness to do anything asked of him. A couple years back, Michael was one of the photographers assigned to cover the Oklahoma City Memorial Marathon. Covering the marathon is a bit tricky with thousands of runners spread out all over the city. The runner I happened to be writing about happened to be on the course near Lake Hefner when Michael arrived to get some shots of him. Unbeknownst to both of us, the marathoner ran by us. In attempt to get a shot, Michael sprinted ahead of the man to snap several shots. He came back winded, but Michael had the shot.

Having come to known Michael on a more personal level since then, I have seen him interact with friends and family, and I can tell you that he is a loving person. He cares deeply about his family — his parents, his sisters and his little brother. I have been lucky enough to be invited to the Downes' home on several occasions and have seen the love and laughter, the caring and concern that the family has for each other. Like his sisters and brother, Michael is an important part of his family, and I have no doubt that they have already been devastated by what has occurred.

Michael, too, has been punished for what he did. He felt it necessary to resign from his job at *The Oklahoman*. He did so because he felt it might put his news-gathering peers in an awkward situation when they learned of the charges against him. He did it for them, not for himself, leaving behind a profession that he loves. Because most major newspapers provide equipment to their photographers, Michael was left without the tools to continue to the photography trade.

Despite that disappointment, though, he never sulked. He kept right on working, adding hours to a part-time job he had previously taken at the Apple Store. Judging by the number of hours he is working and the extra duties he has taken on, Michael is excelling in his job with the computer giant.

Michael Downes is a young man on the cusp of his adult life. He has shown himself to be a vital part of society, both as an employee, a son, a brother and a friend.

Under the circumstances of his case as I understand them, I believe Michael should receive the minimum punishment. The crime for which Michael pled guilty remains significant, a fact that I know he understands. Receiving the minimum punishment does not reduce the significance of that plea. But I believe Michael and his family have suffered already as a result of this act. Receiving the minimum punishment would be a more than suitable penalty for Michael.

Sincerely,

Jenni Carlson

Lauren Cavin
14200 N May #422
April 22, 2007

The Honorable Joe Heaton
c/o Robert L. Wyatt
WYATT LAW OFFICE
P.O. Box 1947
Oklahoma City, OK 73101

RE:     Sentencing of Michael Patrick Downes
*United States v. Michael Patrick Downes*, Case No. 07-CR-04-HE

Dear Judge Heaton:

I first met Michael when we were sixteen years old, around nine years ago.  We
met through my boyfriend at the time and became instant friends.  We kept in close
contact in high school and then became even better friends in college.  My freshman year
in college Michael lived with my boyfriend and I saw him every day.  The other three
years of college I lived across the street from him and saw him at least three times a
week.  Not only were we good friends, but we socialized with the same group of friends
our entire four years at the University of Oklahoma.  Since college we have kept in
contact and see each other at least once a month depending on our busy work schedules.
Although I do not know all the interworkings of this legal case I am writing this letter on
the behalf of my close friend because I believe that I can vouch for his character.  I am
also concerned with the sentencing phase of his trial and hope that my character reference
will in some way help give insight on what Michael Downes is really like.

From the moment I met Michael I instantly liked him.  I knew that we shared a
common bond of speaking our mind and "telling it like it is".  Michael never ceases to
amaze me with his honesty.  He's the friend that you go to if you want a straight answer

and you know he won't let you down when you really want the truth. He doesn't

sugarcoat things just to please people. This is why people are drawn to Michael, his

down to earth approach to life and his genuineness as a human being. Michael is fun to

be around and is one of the most enjoyable people I know.

Michael has contributed more to society than most people I know. I believe that

he has and will always have the potential to give to his family, his community and

Oklahoma City. Michael is one of my only friends that habitually stays close with his

immediate and extended family. He is continually willing to cook at his home to have all

his relative and friends for what we now affectionately call "mixed grill". Through this

tight knit group of friends and family I fully believe that Michael has the tools to recover

from this unfortunate situation. Michael and I had a lengthy face to face conversation

about the act that he is being punished for. He accepted full responsibility, was

completely honest and open with all of my questions and confident about the progress

that he has made mentally in the last two years. I imagine that confessing all of this to

me would be difficult for him, for he knew that I wouldn't take this situation lightly. But,

through our conversations I conclude that he has been punished during this time period

for what he done and he has taken the responsibility to own up to his inner demons to not

only himself, but to others such as employers, family and friends. I believe that Michael

had the strength to do this because this act was a mistake that he had to confess and work

to move on from, not a lifelong pattern of events.

I sense that if there ever were a situation that someone should be given a

minimum punishment for a crime that this would be it. This is not to say that the crime

should be unpunished. Michael has been punished for the last two years through dealing

with this situation and has owned up to the fact that he has broken the law.

Sincerely,

Lauren Dean Cavin

4/27/2007

Amy K. Downes
9213 Lansbrook Lane
Oklahoma City, OK 73132
29 April 2007

The Honorable Joe Heaton
c/o Robert L. Wyatt
WYATT LAW OFFICE
P.O. Box 1947
Oklahoma City, Oklahoma 73101

      RE:    Sentencing of Michael Patrick Downes
             *United States v. Michael Patrick Downes,* Case No. 07-CR-04-HE

Dear Judge Heaton:

Michael is my brother, confidante, role model and best friend all rolled into one. Being his sister, I have known and looked up to him my entire life. While I may not know all the semantics of the case that Michael is involved in, I feel that I have an important and relevant voice that needs to be heard before all is said and done. I am not only writing this letter to support my brother in difficult times, as he would kindly do for me, but also with concern to the sentencing and punishment phase of the trial.

Michael has always been someone who people are drawn to like a moth to the light. He has so many great qualities that make people love to be around him. He is not only clever and hilariously funny, but is also kind, loving, strong willed, and loyal. He can make me smile, even when I feel like everything is falling apart and has supported me in everything I've done. If I ever have a problem, I know I can go to him for guidance and advice…he has a way of making extremely complicated issues very simple. Michael has so much to offer to his friends and family, that it would be a complete tragedy if he was not given the benefit of the doubt and offered a minimum sentence. He holds this family together. Michael has already suffered greatly for the actions he took, as he had to not only sit down with his friends, siblings and parents, but his *grandfather*, who he is extremely close to, and explain his wrong doing. He has beaten himself up enough about how his actions have affected his family and friends. It is easily said that the act that Michael is being charged with is completely out of character for him. Throughout my life he has done nothing but inspire me with his courage, dignity and leadership.

Our family has suffered greatly as a result of this act. I can't help but wonder what would happen if he was sent off to jail…wonder what my 7 year old brother would do without his big brother, what we would all do without the smiles and laughter that Michael brings to us all the time. We have talked about it together as a family, and have gotten everything out in the open as he has been more than willing to answer questions and help us understand this case. I ask that Michael receive a minimum punishment, not only for the sake of Michael, but for the sake of his family and friends.

The Honorable Joe Heaton
United States v Michael Patrick Downes
29 April, 2007
Page Two


Thank you for your time and consideration.

Respectfully,

Amy K. Downes

**Diane K. Downes**
9213 Lansbrook Lane
Oklahoma City, OK   73132

405-722-5787 (home)  + + +  405-830-5443 (mobile)

April 30, 2007

The Honorable Joe Heaton
c/o Robert L. Wyatt, Esq.
Wyatt Law Office
P.O. Box 1947
Oklahoma City, OK   73101

Dear Judge Heaton:

I am writing this letter on behalf of my son, Michael Downes, who is my firstborn child. Even before he was born, I had great expectations for him.  And from the moment Michael was born and I first looked into his eyes, I knew he had much to offer the world. The matter pending before you, however grave, has not altered my opinion in any way.

Michael grew up in a close and loving family.  He has always been highly protective and supportive of his two sisters, and has become the personal hero of his youngest sibling, Jeffrey, who is seven years old.  We have not yet informed Jeffrey of the charges facing Michael, simply because we feel he is far too young to be expected to confront and understand such adult matters.  As a mother, I am, quite simply, heartbroken.

As Michael was growing up, he not only contributed significantly to his family, where he always brought much joy and comfort, but also to his extended family and broad group of friends.  Because of Michael's outgoing, positive personality, our house was the place where all of his friends, and his siblings' friends, chose to "hang out" and spend time. Michael has always been a responsible and industrious person, having started his own business, detailing private aircraft, at the age of fourteen.  And he earned a surprise nomination by his classmates and faculty for consideration for the highest non-academic award granted by Putnam City North High School.  This nomination was in recognition of the characteristics of leadership, kindness, personal ethics, and service to community. Of his class of nearly 500 students, only five boys were so nominated.  He also earned the rank of Eagle Scout, an achievement of which he remains very proud to this day. Michael continued his leadership through his collegiate years, serving as a dormitory and fraternity officer, as well as a staff member of the University of Oklahoma yearbook and newspaper staff.

This week, while cleaning house, I encountered a personal note, written to Michael many years ago by a classmate at Putnam City North High School. This personal note, written by a young lady whose life Michael touched in a positive way, best defines the true character of Michael Patrick Downes – not the transgression for which he is facing sentencing. Michael had become concerned about the unhealthy behavior exhibited by the young lady and eventually asked her why she acted in such a self-destructive manner. Her response to Michael was that nobody in her family cared about her. Michael told her that, although he did not know her well, he did care about her, and she could instantly see that his concern for her was serious and genuine. After that brief but important encounter, the young lady discontinued her habit of using illegal drugs and has since gone on to earn a high school diploma, is married, and is raising children of her own. Although they have not remained particularly close on a personal level, I hope this example gives Your Honor some degree of understanding as to the unique and special character of Michael Patrick Downes. And while this is a striking example of selfless service to others, it is by no means the only such example of Michael's positive impact on his fellow man.

Our family has been forced to face an impossibly difficult situation, in dealing with Michael's charges. Likewise, Michael has been completely humbled by the circumstances in which he has found himself, being forced to personally inform friends and family of the unattractive details of his past behavior. His own signed confession is a strong testament to Michael's sense of right and wrong. Michael has always learned from his mistakes and has never, to my knowledge, made the same mistake twice.

Michael is still a very young man, and was even younger when the subject acts were committed. To restrict him to a non-productive segment of society would deny the world the benefits of Michael's many positive attributes. By minimizing the severity of the sentence, you would not at all minimize the severity of the wrongdoing. We have always taught Michael to acknowledge his mistakes and to face the consequences. His signed confession and determination to seek counseling, even before telling his parents, is a sign that he learns from his mistakes and understands right from wrong. Each and every person Michael has informed has expressed complete support for Michael, and has acknowledged that he had no malicious intent whatsoever. He has a very large and supportive group of friends who will be there to help him succeed.

As his mother, I am asking that you allow him to continue to be a productive and positive member of society, his family, his church, and his profession. I believe that the minimum punishment should be considered---as I remain confident he still has a lot to offer this world.

Respectfully,

Diane K. Downes

Diane K. Downes

April 30, 2007

3400 NW 16th St
Oklahoma City, OK  73107

The Honorable Joe Heaton
c/o Robert L. Wyatt
WYATT LAW OFFICE
P.O. Box 1947
Oklahoma City, OK 73101

            RE:      Sentencing of Michael Patrick Downes
            *United States v. Michael Patrick Downes*, Case No. 07-CR-04-HE

Dear Judge Heaton:

The second of four children in the Downes family, I am not only one of Michael's younger sisters, but also his close friend and roommate.  From taking turns pulling each other in the little red wagon when we were younger to following his footsteps in leadership positions through high school and college, Michael is one of my close and trusted friends as well as a role model.  I understand the charges of which he has been accused and I am writing to you regarding his sentencing and punishment.

I am struggling with writing this letter, Your Honor, not because I am hesitant to write on behalf of my brother, but simply because I am not sure how to summarize Michael's life in a two page letter.  He has been such an inspiration to me throughout my life, and this is reflected in my choices as a young adult.

Luckily Michael was a kind big brother and let me hang out with him and his friends in high school.  This proved to be very beneficial to me during such a delicate time in a young girl's life.  As you may know, in high school teens are heavily influenced by their peers and often make poor decisions.  Fortunately for me Michael was not your typical high schooler and neither were his friends. (Their idea of doing something mischievous was to ride tricycles up and down the hallways on the last day of school.)  Level-headed, well behaved, and family-oriented, instead of going out and partying like many teens, they would often congregate at my parents' house.  As a direct result of having Michael to look up to during these years, I too decided that the party scene was not for me.

My brother was also involved in leadership positions in high school, such as class officer and student council officer.  My freshman year of high school, and every year after that, I followed suit by running for class offices.  And when he decided he was going to attend The University of Oklahoma to continue his education, I wasn't far behind.

But we must realize that even role models make mistakes; however, it takes a very strong individual to admit his faults and take steps to correct them. I know that Michael is one of those strong individuals. He is a very focused and determined young man and has shown in the past that he can overcome difficult obstacles in his life.

There is a reason that every case is looked at individually, and I believe that Michael's situation is a perfect example of why that is necessary. The crime committed is a serious one, and should not be taken lightly. However, I believe that Michael should be shown leniency because he has already suffered greatly for his crime and has taken steps to correct his mistake. He has had to explain his problem and the crime in detail to countless friends and to his family.

Each of the letters written on Michael's behalf represents one more person who feels the same way I do. As his family, I will stand by his side and love him no matter what the outcome, and I know his friends feel the same way. I hope you take into consideration the fact that so many people of so many backgrounds have come together for one young man. That, to me, speaks volumes. I ask of you that you take into consideration Michael's distinct case. I know that he will be a productive part of society and am confident that he will not repeat his actions and therefore ask that you show leniency toward his unique case.

Sincerely,

Kristin Downes

Kristin Downes

*Patrick J. Downes*
**9213 Lansbrook Lane**
**Oklahoma City, OK 73132**
**405-722-5787 (home) + + + 405-640-3755 (mobile)**

April 29, 2007

The Honorable Joe Heaton
c/o Robert L. Wyatt, Esq.
WYATT LAW OFFICE
P.O. Box 1947
Oklahoma City, OK 73101

RE:   Sentencing of Michael Patrick Downes
      *United States v. Michael Patrick Downes*, Case No. 07-CR-04-HE

Dear Judge Heaton:

It is my understanding that you will soon consider sentencing in the above-styled matter involving Michael Patrick Downes. Michael, my eldest child, has always been the joy of my life and, in fact, that of our entire family. And while I expect you will also receive letters from Michael's friends and family members, please understand that there is no one who could love him more, or know him better, than his mother and me. With the exception of this single transgression, Michael has never been in any serious trouble whatsoever. Michael has always been a good student, a solid citizen, a leader by example, and a deeply spiritual and caring person.

The action for which Michael is facing federal charges is wholly out of character for him. Judge Heaton, this is not a matter of mere speculation on my part, nor is it wishful thinking by a father wishing to save his dear son from an impossibly difficult life, filled with despair and disappointment. I am confident my perspective on Michael's character is true and accurate, based on the heartfelt and apologetic *mea culpa* of which Michael was both author and scrivener, independent observations made over time by a professional counselor, and salient comments from Michael's friends and co-workers. However, the most important consideration in confirming Michael's good character is Michael's own personal behavior, which, as you might imagine, has been under particularly intense scrutiny, by me and my wife, since he first confronted his wrongdoing. We have two daughters and another son, Michael's younger brother, Jeff, who is seven years old. You must understand that if we believed for even one instant that Michael was capable of being drawn to harm children, we would be among the first to insist that he be separated from society for as long as necessary. Every indication, in word and action, is that Michael poses absolutely no such threat to anyone, of any age.

The Honorable Joe Heaton
Case No. 07-CR-04-HE
April 29, 2007
Page Two

While Michael faced childhood and adolescent challenges typical of his day, he was always seen, both by classmates and faculty, as a motivated, intelligent, resourceful, considerate, and elected to office in student life and fraternal organizations at Hefner Middle School, Putnam City North High School, and The University of Oklahoma. He was, and is, a natural leader, an Eagle Scout, in whom many are willing to place their trust. He is of great service to his three living grandparents, including my mother who is under hospice care, and my father who is legally blind and severely hearing impaired. He also was a loyal companion to his beloved grandmother, Ireleen Simmons, who died of cancer in 2004. To this day spends time with his childhood babysitter, who is in currently in her 90s and in failing health. These behavioral traits do not seem indicative that either Michael, or the United States of America, would benefit from his incarceration, or being labeled as a convicted felon for the rest of his days.

Michael has fully and voluntarily acknowledged the seriousness of the charges against him and has taken personal responsibility for his poor judgment. More importantly, Michael quickly came to the realization that his actions were as harmful to himself as they were to his colleagues, friends, family, and society as a whole. His written statement to the investigators said as much. He resigned his position with The Oklahoman, not because he wanted to avoid controversy, but simply because he believed that separating himself and his serious misdeeds from such a noble and respected institution was, quite simply, the right thing to do. Michael has since pursued a career with Apple Computer, Inc. and has received accolades from supervisors and clients alike, as well as two significant promotions. Michael is a very determined, almost hard-headed character. When he sets a goal, he achieves it. When he makes a commitment, he stands behind it. When he makes a mistake, he admits it. And when he says he will never again dedicate his idle time to such negative pursuits, you can believe it. His track record is quite clear in that respect.

Michael is a special young man – a very good person who made a bad mistake. The circumstances of his case are unique. As Michael's father who has loved him since before he was born, it is my plea that you will exercise judicial discretion in favor of allowing Michael to make amends for his transgression in a way that truly benefits society, and Michael himself. Should you wish to discuss any aspect of Michael's life, or the case before you, I would be pleased to visit with you at your convenience.

Respectfully submitted,

Patrick J. Downes

Laura Eckel
242 Sterling Farm Drive
Atoka, TN 38004

The Honorable Joe Heaton
c/o Robert L. Wyatt
WYATT LAW OFFICE
P.O. Box 1947
Oklahoma City, OK 73101

Re:     Sentencing of Michael Patrick Downes
        *United States v. Michael Patrick Downes,* Case No. 07-CR-04-HE

Dear Judge Heaton,

I have grown up with Michael Downes and have had the pleasure of calling him a
close friend for almost twenty-six years. As children, Michael and I would play together
frequently and later completed the same secondary and post secondary schools. After
high school, we both attended the University of Oklahoma where our friendship
continued to grow. I know that I am not aware of all of the details of this case, but I am
writing this letter concerning the sentencing and punishment phase of the trial.

Throughout the years, I have enjoyed watching Michael develop into an adult.
Michael's character has shown only love, kindness, and thoughtfulness. Michael is a
genuine friend and is eager to lend a hand whenever needed. For example, a friend of
mine was unable to afford an expensive photographer for her wedding so I suggested that
she ask Michael to see if he would do her a favor and take all of the pictures. Even
though Michael is not fond of shooting weddings, he agreed and made time to capture so
many wonderful memories. During high school, I would regularly walk across the street
to the Downes' home when I was having a bad day. Michael was always there the listen
and help me laugh off the situation. This is yet another example of how Michael
consistently affects others in a positive manner. Michael is the type of person that will
make a friend when he walks into a room of strangers. He is friends with a wide variety
of people and different personalities. I am very thankful to be able to call Michael a close
friend. I believe that Michael has received punishment for this act. The night he called
to tell me the entire story he was extremely remorseful and confessed his mistake. He
explained the long road he faced during therapy sessions to understand the underlying
struggles associated with this issue. After I heard the entire story from Michael, I was
shocked. This act is completely out of character, and he is aware of his mistake. I
believe that Michael is still a wonderful person and that he will continue to influence
others in a positive way.

Under the circumstances, I believe that Michael deserves a "minimum
punishment" for his action. I believe this punishment would not reduce the significance
of the crime he has pled guilty. I believe that Michael and his family have already

suffered from this situation and Michael is genuinely remorseful of his actions. I will continue to trust Michael, as well as his family, with my future children.  I appreciate you taking the time to read our letters.

Sincerely,

*Laura Katherine Eckel*    5/7/07

Laura Katherine Eckel

1000 South Denver Ave #4104
Tulsa, OK 74119
April 28, 2007

The Honorable Joe Heaton
c/o Robert L. Wyatt
WYATT LAW OFFICE
P.O. Box 1947
Oklahoma City, OK 73101

     RE:   Sentencing of Michael Patrick Downes
             *United States v. Michael Patrick Downes*, Case No. 07-CR-04-HE

Dear Judge Heaton:

    I have had the privilege of knowing Michael Downes for seven years. We met through mutual friends at the beginning of college and Michael quickly became like a brother to me. We lived across the street from each other for three years in college at the University of Oklahoma and have stayed best friends since graduation in 2004. I have spoken with Michael several times about his case. Although I do not have a broad knowledge of the legal system nor have I experienced this trial first-hand, I am writing in support and defense of Michael Downes' character regarding his sentencing.

    Michael Downes possesses countless admirable qualities that make him one of the best friends I have ever had. Michael is open, honest, dependable, loving, committed, considerate, sympathetic, and, most importantly, selfless. Michael and I have spent countless hours together during and after college, often times sitting outside talking or studying. During these times, Michael is always willing to put any of my needs before his own. Michael always offers to drive me since I am the single girl of the group, or if I drive alone, he consistently calls to ensure that I made it home safely. Michael always opens his door when I need him for a favor, or just as a friend to lend an ear. Despite everything that he has been through in the past two years, he never minimizes the significance of any problems or issues that I might have, and listens to me whole-heartedly. I know I can count on Michael for anything, and he has never disappointed me. During the past seven years, Michael has allowed our friends the privilege of also getting to know his family. It is not surprising that Michael is such a warm person because his extended family is also full of love, and has welcomed all of us with open arms to become part of their family. Michael and his parents invite everyone to family grill-outs at least once a month, where we often play games or just sit around and talk. I have observed the respect and openness between Michael and his parents, and I have noticed admiration and love between Michael and his siblings. Out of all of my friends, I know Michael's family the best, because to them no one is a stranger.

    Michael Downes is also a person that is very committed to success and is very dependable. When he was working for the Daily Oklahoman, there were many nights that he was asked to come into work when he already had plans. Even though he didn't have to, Michael would always forgo his own wants to help out a fellow coworker or to drive his own success. As evident in some of his recent career achievements, Michael knows what it takes to be successful. He was disciplined in school, graduating college in four years while working. It is because of this discipline and commitment that Michael has succeeded in repenting for his actions. He has endured guilt and shame for his actions and made numerous steps to change his life. Because Michael is such a selfless individual, the pain that this event has caused his friends and family has been further punishment for him. This action is completely unlike anything I have ever witnessed from Michael, and I believe that the action was made by a confused boy a few years ago. With the therapy, self growth and reflection that Michael has completed over the last few years, I believe he has matured to realize the severity of his action, has spent time repenting for it, and has conquered his lack of self esteem.

    Under the knowledge of this case as I understand it, I firmly believe that Michael should receive a minimum punishment. I recognize the severity of his action but believe that his action does not represent the person that he is and has become today. Michael is so full of life and love to give others that I can not imagine restraining that to a prison. He is also surrounded by a loving group of family and friends, which has been vital to the progress he has made to mature and repent.

    As a girl of child-bearing age, I will someday be blessed with kids that will adore their "Uncle Michael." I look forward to having him in my life and in my children's lives in the future. I know and trust Michael Downes fully and hope that he can continue to grow and heal outside of prison.

                  Sincerely,

*Shelley Christine Fehrenbach*   4/28/2007
Shelley Christine Fehrenbach

## *JANET E. HENDERSON*
### *1022 W. Grace Street*
### *Chicago, IL 60613*


May 3, 2007


The Honorable Joe Heaton
c/o Robert L. Wyatt
Wyatt Law Office
501 N. Walker Avenue
Suite 110
Oklahoma City, OK 73101

Re:   Sentencing of Michael Patrick Downes
       United States v. Michael Patrick Downes, Case No. 07-CR-04-HE

Dear Judge Heaton:

I am a friend of the Downes family. I have known Michael's father since high school and his mother since college. I have known Michael virtually his entire life. I am writing this letter in the hope of providing some useful insights into the character of Michael Downes.

As a partner in a law firm (Sidley Austin LLP), I understand the paramount importance of the rule of law. I also understand the importance of judicial discretion in bringing wisdom and context to the application of our laws.

As indicated at the beginning of this letter, I have known Michael for most of his life. As I watched him grow up, he was an attentive and respectful young man; kind, thoughtful, eager to help and duty oriented, who consistently exhibited a strong work ethic and a commitment to his family. I have never known him even to utter words in anger towards others, much less harm anyone or anything. In 1996 my father became very ill and subsequently died, and the Downes family was a constant presence through this difficult time. Even though very young, Michael was always there, whether at the hospital or my parents' home, to lend support to our family and do whatever he could to make this time easier for us. His caring, maturity and poise were beyond his young years and only confirmed what I already knew -- that he is a decent and good human being.

I believe it is important to note that, absent this single, regrettable act, Michael has led an exemplary life, never getting into trouble, never causing his family pain or hardship. That this unfortunate act is not representative of Michael's character is demonstrated not only by my experience with him and that of others who know Michael, but also by a life story unmarred by

The Honorable Joe Heaton
May 3, 2005
Page 2

any other blemishes; one that uniformly reflects a good son, a good student and a productive member of society.

I know the profound regret and contrition that Michael feels, and I know that he and his family have suffered enormously already.  I can also tell you unequivocally, however, that this act is not "in character" for Michael and is not representative of the person.  Michael is not a "predator;" he is not someone who, in the wildest stretch of the imagination, could ever be characterized as a threat to anyone.  Michael's transgression was a serious mistake on his part -- one that he acknowledges and for which he takes full responsibility.  This letter is in no way intended to diminish the seriousness of Michael's mistake.  I firmly believe, however, that it would likewise be a serious mistake to impose a punishment that fails to take into account the totality of the person and that fails to recognize this act as a single, isolated occurrence in Michael's life -- a mistake that will not be repeated.  I would ask that your Honor try to place this mistake within the larger context of Michael's demonstrated character and the life he has led.  I would respectfully request that your Honor impose only the minimum punishment and that Michael be given probation.  I am confident that justice will be served if your Honor does so.  I know this young man, and I know that your Honor will not be disappointed.

Thank you for your consideration.

Respectfully,

Janet E. Henderson

CH1 3858743v.1

April 26, 2007

8909 N. MacArthur Terrace
Oklahoma City, OK 73132

The Honorable Joe Heaton
c/o Robert L. Wyatt
WYATT LAW OFFICE
P.O. Box 1947
Oklahoma City, OK 73101

      RE: Sentencing of Michael Patrick Downes
       *United States v. Michael Patrick Downes, Case No. 07-CR-04-HE*

Dear Judge Heaton:

    My name is Elizabeth (Betty) Herman and I am a teacher at Putnam City North High School. As such, I advised Michael Downes for three years as a publications/photography student.

    Although I am unaware of all of the facts in Michael's case, I am writing concerning the sentencing and punishment phase of the trial.

    Michael is a kind and considerate young man who never failed to go above and beyond what was asked of him to cover school events either by his writing or his photography. As a photographer, he helped me with staff scheduling and willingly covered for others quite often. Michael is a gifted young many who should do well in whatever career field that he chooses.

    As Michael's mentor for three years, it is difficult to believe that he committed this act. I believe that he has suffered immensely for his action which is completely out of character for the Michael I know. To me, Michael has always been a young man with strong family values.

    I believe that under the circumstances as I know them, Michael should receive a minimum punishment. A minimum punishment certainly does not reduce the significance of the crime for which Michael pleaded guilty, but I believe that both he and his family have suffered greatly as a result of his act.

    I know that Michael is truly remorseful of his actions. He understands his responsibilities and I know that he has sought help for himself.

Sincerely,

*Elizabeth Herman*

Elizabeth Herman

*April 26, 2007*

Saturday, April 27, 2007


Carole Kelley
2100 NW 62nd St.
Oklahoma City, Oklahoma 73112


The Honorable Joe Heaton
c/p Robert L. Wyatt
WYATT LAW OFFICE
P.O. Box 1947
Oklahoma city, Oklahoma 73101

RE: Sentencing of Michael Patrick Downes
   *United States v. Michael Downes,* Case No. 07-CR-04-HE

Dear Judge Heaton,

      I have known Michael Downes in many different settings over the years including being his former Putnam City North High School US History teacher, being his neighbor, being his high school advisor and being a friend.  I am forwarding this letter to you because as a teacher in an inner-city high school, I observe students and parents everyday who have received a "second chance" and have become viable members of our community.  This letter is for sentencing purposes because I acknowledge I do not have all of the details of Michael's crime and for that reason, I can not judge or forgive his actions but I can offer my observations of this individual over the years as a consideration for his punishment.

      Before I could write this letter, I had conversations with Michael regarding his own sincerity about receiving help and that he acknowledged what he did was wrong.  Having to acknowledge this crime to his family, his superiors and take responsibility for his actions, proved to me his willingness to accept the consequences and his effort to live a better life.  This is a stigma which has changed his future career plans and altered his life's course, but he never once tried to blame this on another or shirk from his responsibility.  He accepted the consequences and will live with this the rest of his life.  Michael is a good person with a character flaw.  A flaw he is seeking help to correct.

      I do believe Michael has the potential to be an asset to his community and a minimum sentence should be considered.  No matter what sentence you may give him, it will only be relatively minor compared to his knowing the pain and suffering he has given to his family and friends.  That is the lifetime sentence.  I also know Michael's family and know how supportive they have been and will continue to be.

      Because of Michael's "good" attributes, I will always continue to say that "I am proud to have been one of his teachers and to have known him."  Please consider a "minimum punishment" for Michael as a second chance for this young man to redeem some portion of a "normal" existence.

      Thank you for you consideration toward giving Michael a "second chance".

                                   Sincerely,

                                   *Carole Kelley*
                                   Carole Kelley

April 29, 2007


2100 NW 62
Oklahoma City, OK 73112


The Honorable Joe Heaton
c/o Robert L. Wyatt
WYATT LAW OFFICE
P.O. Box 1947
Oklahoma City, OK 73101

Re: Sentencing of Michael Patrick Downes
      United States v. Michael Patrick Downes, Case No. 07-CR-04-HE

Dear Judge Heaton,

I have known Michael Downes since he was four or five years old. He was a playmate of
of my sons, John Kelley and Mike Kelley, at a preschool in northwest Oklahoma City.
We also met his parents, Pat and Diana Downes, at the time through preschool activities.

I followed him through adolescent and teenage years, primarily through my wife, Carole,
who had Michael as a student at Putnam City North High School. We lived in the same
neighborhood in northwest Oklahoma City as his family, in Lansbrook, for seven years,
and often saw him, his parents and siblings in the area. He gave every appearance of a
well mannered, hardworking young man who had a strong family to support him.

Most importantly, I knew Michael from his employment at The Oklahoman, where I am
editor. He told me when we hired him as a part-time employee that his lifelong dream
was to work for his hometown newspaper, and he got that chance before most people his
age. He didn't waste it, either.

He was an industrious photographer, who often worked evenings and weekend shifts but
didn't complain. Fellow employees found him easy to work with and a colleague who
tried very hard to please his supervisors. His work product for someone his age was
pretty good. He could have made a career at The Oklahoman, given likely improvement
as he gained more experience. He has the foundation to be an excellent journalist.

Sincerely,

Ed Kelley

## MUSTANG PUBLIC SCHOOLS

*Mustang, Oklahoma 73064*

April 27, 2007

Elanna Killackey
415 Benton Road
Edmond, OK 73034

The Honorable Joe Heaton
c/o Robert L. Wyatt
WYATT LAW OFFICE
P.O. Box 1947
Oklahoma City, OK 73101

      RE:    Sentencing of Michael Patrick Downes
            *United States v. Michael Patrick Downes*, Case No. 07-CR-04-HE

Dear Judge Heaton:

I have known Michael Downes for two years, as a close and personal friend. While I do not have all the facts and details of the case, I am writing in concern to Michael's sentencing and punishment.

Michael is an extremely outstanding person. He is one of the brightest, most caring, most compassionate and versatile friends. If a friend or family member were ever in need of help or assistance, Michael would always be the first one to ask, "What can I do to help?" Michael is a valuable giver to his family, friends, life, and society.

Under the circumstances, as I understand them, Michael should receive a minimum punishment. I realize that a minimum punishment does reduce the significance of the crime for which Michael has pled guilty. However, Michael and has family have suffered enough for this act.

           Sincerely,

           Elanna Killackey

## MUSTANG PUBLIC SCHOOLS

### Mustang, Oklahoma 73064

April 27, 2007

Regan Killackey
415 Benton Road
Edmond, OK 73034

The Honorable Joe Heaton
c/o Robert L. Wyatt
WYATT LAW OFFICE
P.O. Box 1947
Oklahoma City, OK 73101

RE:     Sentencing of Michael Patrick Downes
        *United States v. Michael Patrick Downes*, Case No. 07-CR-04-HE

Dear Judge Heaton:

I met Michael through a colleague of mine while teaching at Putnam City North.  I do not know the details of the case, but I do know the character and integrity of Michael.  I am writing in response to the now known punishment.

Michael Downes is without a doubt one of the most sincere and caring individuals I have met.  His level of candor is remarkable along with his level of personal respect.  On many occasions I have seen him display this level of caring competence.  Just weeks before my wife and I were married Michael agreed to arrange and photograph our wedding.  The outcome was phenomenal.

I have been informed about the crime and its consequences.  I do believe that Michael deserves a minimum punishment.  The federal mandate set for child pornography is applicable in many cases; however Michael's case does not deserve such a penalty.  He has taken the necessary steps to correct his problems inside and outside of the justice system.  Michael Downes is a pillar of society that constantly uplifts all individuals he encounters.

Sincerely,

Regan Killackey

Downes Mitigation Letters Page 37

## Steven Lackmeyer

17413 Cranbrook Road
Edmond, OK 73003

405-740-4139

April 23, 2007

The Honorable Joe Heaton
c/o Robert L. Wyatt
WYATT LAW OFFICE
P.O. Box 1947
Oklahoma City, OK 73101

RE:   Sentencing of Michael Patrick Downes
*United States v. Michael Patrick Downes*, Case No. 07-CR-04-HE

Dear Judge Heaton:

My name is Steve Lackmeyer, and I am a reporter of 17 years at The Oklahoman, an author, and a graduate of Oklahoma Christian University.

I have been acquainted with Michael Downes going back a decade to when he was still in high school, expressing an interest in journalism. His father asked me to speak to Michael (as I recall, it was for a book report, but I'm not certain). In the ensuing years I kept track of Michael's progress through the time he won a shot at one of the hardest departments in the Oklahoman's newsroom – photography.

Michael earned the respect of his peers, and worked against the odds to progress from intern to part-time employee. I believe he would have been on his way by now to becoming a full-time photographer if not for his bad choices.

Michael, however, should absolutely be given a chance to redeem himself. I know it can be done. Much like Michael, my younger brother Chris was a troubled teen who was not emotionally progressing at the pace one might expect for his age. He made bad choices as well, and by age 21 he was both using and selling methamphetamines. My wife and I tried to help Chris, even taking him into our house twice. We had to force him to leave when we found marijuana in our home. So when sheriff's deputies rang our doorbell at 6 a.m. on a Sunday in 2000, we weren't completely shocked by the news he was charged with use and distribution of a controlled dangerous substance.

Our family convinced Chris to go with a respectable attorney who wanted him to do the unthinkable: be honest, face what he had done, and plead guilty. Chris did just that, facing the prospect of a 10-year sentence. We thank God the judge chose to place Chris in boot camp instead.

The judge gave Chris a second chance. With help of his family, Chris took that second chance and never drifted back toward his old life. Seven years later he is married, a brand new father, and owner of a business. Chris is the success story we all yearn for.

Michael has taken many of the same steps. I thoroughly believe Michael will also redeem himself. I know Michael's family, and I believe they will support him in a way that will help him become a man we can all respect and admire.

I think so much of Michael that I turned to him to create the cover art for my first book. And despite his crime, I would entertain working with him again, if he so chose. I truly believe that the consequences of Michael's behavior have already been devastating to both Michael and his family. With counseling and guidance, not incarceration, I think great things are still ahead for Michael Downes.

Sincerely,

Steve Lackmeyer

April 24, 2007

RE:  Sentencing of Michael Patrick Downes

The Honorable Joe Heaton
c/o Robert L Wyatt
WYATT LAW OFFICE
PO Box 1947
OKC, OK 73101

Dear The Honorable Joe Heaton,

 My name is Angela Lee and I am a teacher at Putnam City Schools.  I teach junior Advanced Placement English and have been employed as a teacher for the past ten years.  I have known Michael for a little over two years.  I have been his roommate for the bulk of that time.  I became acquainted with Michael through some former teachers of his.  He and I became fast friends and when his former roommate was deployed back to Iraq it was an easy decision for me to agree to rent her room.  On meeting Michael the first time I was struck by his open and genuine nature.  He is someone who is kind, ethical, and honest.  He is easy to talk to and get along with.  Of all the roommates I have had he is by far the easiest person to live with.  I know that he will approach all situations with fairness and other people's feelings in mind.

I was saddened and shocked when he told me of this bad decision he made.  I am certain that it is due to a minor lapse in judgment and is not at all related to his overall character.  I had no concern upon learning the news that it was a permanent part of his personality.  I also know that he started seeking counseling immediately.  Michael is now like family to me and I reacted as such to the news.  I never had any doubt as to the extent to which he regrets this decision.  He was also worried about the extent to which his behaviors could reflect on me since we are such good friends and I rent his house.  However, I was not.

As a part of a national teaching portfolio I was working on I asked Michael to come to my class as a guest speaker.  He is a journalist and I was doing a unit on the effects of photojournalism on current society.  I asked him to come to my class to speak about photo ethics and the state of current photojournalism.  I knew that he has done several presentations on college campuses and would be a great person to speak to my class.  I have also held study sessions at our house with students of mine.  Not once did I have a second thought about their safety.  I would still not worry about having Michael interact with my students.  He is an upstanding and ethical person who made a bad decision and will now have to pay the consequences of that decision.

In reference to the consequences of his decision, I am asking for you to consider some leniency to him in this regard.  Michael has taken steps to curtail any behaviors related to this bad decision that he made.  He is not a threat (and I doubt if he ever was) to society or to himself.  He deeply regrets his choices and has paying enough for the already.  Michael has been forthcoming in this matter with all family and close friends.  It has been very hard on him to expose such a decision to his family, friends, and employers.  I believe that he deserves only the minimum punishment for this crime and does not take lightly anything he has been through.  I know that he will never make such a decision again and has regretted all the heartache it has caused his family and friends

Sincerely,

Angela Lee M.S.

Dennis Leehan
132 Mt. Vernon Drive
Norman, OK  73071

April 26, 2007

The Honorable Joe Heaton
c/o Robert L. Wyatt
WYATT LAW OFFICE
P.O. Box 1947
Oklahoma City, OK  73101

RE:   Sentencing of Michael Patrick Downes
       *United States v. Michael Patrick Downes,* Case No. 07-CR-04-HE

Dear Judge Heaton:

Belonging to a good family is one of life's greatest blessings.  A good family provides support and love for living our life.  I believe Michael is part of such a family.

Michael Downes whom you are soon to sentence in this case is the eldest son of my first cousin Pat Downes and his wife Diane.  Michael's dad Pat and I grew up together in Tulsa and he has always been like my fourth brother.  Our family has been close every since and so I have known Michael since he was born.

I appreciate the gravity of this case and your role as Michael's Judge.  I have been employed by the Oklahoma Supreme Court in their administrative offices for many years and so have had the privilege of working for many members of the Oklahoma judiciary.  I am aware of and respect the great service and responsibility of judges is serving the judicial branch of our country.

I write to implore leniency as you make your decision in Michael Downes' sentencing.  As you consider the evidence before you, the controlling law and the balance to be struck between the interest of the United States and Michael in this case I ask you to remember what his parents and family sees.

Michael has always been an intelligent, caring and responsible young man but for this transgression.  He has always been close to his family and present with them to celebrate the many joys of family life and support them in the sorrows.

Michael has always been a good student and never to my knowledge has he been a disciplinary problem.  He has always set goals for himself like earning the Eagle Scout award.  Michael and his family have been members of the Epiphany of the Lord Catholic Church in Oklahoma City.  He earned his bachelor's degree at the University of Oklahoma while participating in campus activities and working part time to help pay his expenses.  Since graduating he has been consistently employed, purchased his own home and was building a good and constructive life.

I have never known Michael to be a threat to anyone.  It is my understanding he has taken responsibility for his actions and completely cooperated with the authorities at every step in this process.  He also sought and I am told continues to receive the professional care of a psychologist.

I ask you to consider leniency in setting his punishment with a view to allow him to continue to make amends to society by rebuilding his life in the proper path of a good citizen of this country and a loving member of a family.

Respectfully Submitted,

Dennis Leehan

Downes Mitigation Letters Pg  35

Ja'Rena Lunsford
1308 E. Brooks St.
Norman, Okla. 73071
April 20, 2007

The Honorable Joe Heaton
c/o Robert L. Wyatt
WYATT LAW OFFICE
P.O. Box 1947
Oklahoma City, OK 73101

            RE:    Sentencing of Michael Patrick Downes
            *United States v. Michael Patrick Downes*, Case No. 07-CR-04-HE

Dear Judge Heaton:

       I have known Michael Patrick Downes for nearly seven years. Michael and I met our freshman year at college during orientation for *Sooner*, The University of Oklahoma's yearbook.

       Michael and I became fast friends and for the next four years at OU we became almost inseparable as we worked on the yearbook staff together, took journalism classes together and prepared to graduate. Michael is one of my best friends; he was even the photographer at my wedding two years ago.

       I am writing to ask that you are lenient in Michael's sentencing and punishment. I ask that you take Michael's entire character into consideration.

       Michael is one of the kindest people I know. He is friends with anyone and everyone. At OU, everyone seemed to know who Michael Downes was — from members of the Greek community to band members to academia, Michael was and is well-liked by everyone. Michael is one of my best friends and though he has been going through a hard time himself, he took the time to console me when my mother passed away last November. Michael never once put his hardships first, but instead he gave me a shoulder to cry on.

       Please know that I understand the seriousness of the charges against Michael, but also know that I know Michael too, and I know that these charges are not representative of who he is. Michael is a strong Christian who knows that everyone makes mistakes and deserves forgiveness. He also knows that forgiveness is not an excuse to make the same mistakes again.

       Once again, I ask that you are lenient with Michael. Please consider probation as an appropriate punishment and know that no amount or type of punishment will ever outweigh the amount of hardship this ordeal has had on Michael's life, friends, family and character.

       Thank you for your time.

Sincerely,

Ja'Rena Lunsford

2812 NW 21st St.
Oklahoma City, OK 73107
4/27/07


The Honorable Joe Heaton
c/o Robert L. Wyatt
WYATT LAW OFFICE
P.O. Box 1947
Oklahoma City, OK 73101

      RE:    Sentencing of Michael Patrick Downes
             United States v. Michael Patrick Downes, Case No. 07-CR-04-HE

Dear Judge Heaton:

I met Michael through mutual friends about 2 years ago.  I am writing in reference to the sentencing and punishment phase of his trial.  Although I am not familiar with all the details of the case, Michael has matter-of-factly shared his situation with me.

Michael is sincere, honest and straightforward.  He is a genuinely kind and friendly person who listens well and offers well-reasoned opinions when asked.  He honors his commitments to friends and family, always willing to help in whatever way is needed.

Maintaining strong relationships with his family, neighbors and co-workers, Michael has a deep affection for the Oklahoma City community, and much potential to make a positive impact here.

The news about the charge was shocking to me, as honesty, fairness, and respect are central to his character.  Michael has taken responsibility for this act, never making excuses for his behavior.

It is my belief that this crime, while very serious, was an isolated error in judgement. Michael is fully cognizant of the harm such actions can cause.  He has participated in counseling, resigned from a job he loved, and admitted this fault to all his friends and family.  I feel that it is in the interest of the community as a whole that Michael receive a minimum punishment.  He has worked hard to make amends.  He is a true asset to any endeavor and will continue to make many contributions to society.

      Sincerely,


      Stephanie L. Marrs RN, BSN

Annia Morris
P.O. Box 721566
Oklahoma City, OK 73172

The Honorable Joe Heaton
c/o Robert L. Wyatt
WYATT LAW OFFICE
P.O. Box 1947
Oklahoma City, OK 73101

RE:     Sentencing of Michael Patrick Downes
        *United States v. Michael Patrick Downes*, Case No. 07-CR-04-HE

Dear Judge Heaton:

My name is Annia Morris and I am a teacher in the Putnam City School district. I am also a close friend of Michael Downes. I met him through mutual friends about two years ago. I quickly found him to be a decent, warm-hearted, and caring person. Honestly I was completely surprised to discover this lapse in judgment on his part and found it to be completely out of character for him. I understand that Michael has made a huge mistake, but I would like to submit my own plea for leniency in his case because I have found him to be such a wonderful friend and person.

I find that Michael is a caring and considerate individual. On repeated occasions I know that he has provided companionship and care to his elderly grandparents. I can identify with that because I also provide some care to my own grandparents. In both of our professions, ethics is very important, and I have found that Michael's integrity as a journalist is of utmost importance to him. I believe that, with the exception of this one mistake, he is an upstanding and productive member of the community. I do not feel that Michael is a threat to himself or anyone around him. When I first learned of the situation, I was shocked, but I had no qualms about remaining friends with Michael and no worries that he might be a danger to me or anyone else.

I know that Michael has had a difficult time dealing with his current situation and has been attending regular sessions with a counselor. I know that he feels badly about it and was embarrassed to tell us for fear of what we might think of him. The entire process has been taxing for Michael, and I believe that he regrets this decision immensely. To my knowledge, Michael has not engaged in any behavior related to this issue in a very long period of time, and he certainly is not flippant about the issue or this process by any means. I do not believe that any undesirable behaviors will develop in the future, because I believe this is an isolated aberration in Michael's otherwise excellent character and ethics.

I understand that Michael has made poor decision and that he will have to pay the consequences of that decision, but I would like to respectfully ask that you consider leniency in his sentencing. I believe that Michael should receive the minimum sentence possible in his circumstances. I know that he already regrets this decision and has suffered significant heartache because of it.

Thank you for your consideration.
Sincerely,

Annia N. Morris

The Honorable Joe Heaton
c/o Robert L. Wyatt
WYATT LAW OFFICE
P. O. Box 1947
Oklahoma City, Oklahoma 73101

RE: Sentencing of Michael Patrick Downes
*United States v. Michael Patrick Downes*, Care No. 07-CR-04-HE

Dear Judge Heaton:

I have known Michael Downes for 20 years. Michael and my children attended D.D. Kirkland Elementary School, Hefner Middle School and Putnam City North High School. I was also Michael's Junior Honors English teacher at Putnam City North High School. Although I do not have all of the facts and details concerning the case, I am writing concerning the sentencing and punishment in this case.

Michael is a wonderful young man. He possesses the kindness, considerateness and thoughtfulness that we would hope that all of our children would possess. Not only has he been a personal friend to my family, he was my student. He always had a curiousness about learning and literature became one of his favorite subjects. Never afraid to express his thoughts in class, he always added deep insight into our discussions. Always willing to help anyone, I have found him to be a deeply caring young man and I know through conversations with him, he is deeply remorseful for what he has done.

Michael Downes has the potential to make significant contributions to our city and state. He has been given the talent of "taking pictures" and he has used this talent to not only enhance our daily newspaper but also illustrate books promoting our locale. Because of his passion for photography, I feel that he can be an important member of our community.

I have had several long conversations with Michael and he has shared with me that his poor self image began in high school. This makes me terribly sad. As a teacher and a friend, I never dreamed that he felt this way. I do know that Michael feels incredibly guilty for what he has done and at one time considered suicide as the only means to find peace.

As I understand the circumstances, I would ask that you would consider leniency for Michael. I know that a minimum punishment does not reduce the significance of his crime but Michael and also his family have truly suffered not only personally but financially as well. I hope that you will find it in your heart to give him every consideration.

Sincerely,

Ann Oswalt

Ann Oswalt

Jacquie Reaves, OTR, MS, CLT
Integris Jim Thorpe Rehabilitation Services
4100 South Douglas
Oklahoma City, OK 73109

April 30, 2007

The Honorable Joe Heaton
c/o Robert L. Wyatt
Wyatt Law Office
Oklahoma City, OK 73101

RE:     Sentencing of Michael P. Downes
        Case No. 07-CR-04-HE

Dear Judge Heaton:

I am writing this letter on behalf of Michael Downes, whom I have known for more than 12 years through his close friendship with my son, Ryan. I have known him to be a loyal friend, trustworthy, and honest. He is a person with personal integrity and stands up for his convictions and beliefs.

Although at times Michael can be mischievous, he has been a very loyal friend to my son and also to me. Despite attending two different colleges, and Michael working while attending school, the boys have remained close friends and have frequent contact with their friend's families. Michael has been available to counsel, advise and offer support and encouragement when Ryan needed it. He even offered a room in his home to Ryan when he was in need of a place to stay while waiting to attend law school.

Michael had worked at the Daily Oklahoman as a photographer and saved his money to purchase a home. He patiently and systematically searched for a home until he found one he could realistically afford and purchased it with an offer to tow of his best friends from high school to be his roommates. They had often talked about someday rooming and "hanging out" together and Michael was loyal to his two old friends, Ryan and Abby. The house warming was a joyous affair attended by his extended family and many friends as well as the families of Ryan and Abby. We knew the three would do well taking care of each other.

Michael has been honest to his friends, his family and his co-workers about his personal beliefs, his conscience and his plans for his life and his future. He has a passion for new and different creative experiences. His interests and inventiveness are apparent in his work, his photography, and in the development of new and creative endeavors in his life. These qualities enrich the lives of those he touches and influences.

I strongly feel that Michael deserves the minimum sentence possible. Please consider his past record of good citizenship, strong work ethic and good family background and support and rule/decide on the minimum punishment for a mistake.

Sincerely,

s/Jacquie Reaves, OTR, MS, CLT

April 28, 2007

Ryan J. Reaves
409 S. Santa Fe Ave.
Norman OK 73069

The Honorable Joe Heaton
c/o Robert L. Wyatt
WYATT LAW OFFICE
P.O. Box 1947
Oklahoma City, OK 73101

RE:   Sentencing of Michael Patrick Downes
*United States v. Michael Patrick Downes*, Case No. 07-CR-04-HE

Dear Judge Heaton:

My name is Ryan Reaves and I am a second year law student at the University of Oklahoma. I am writing concerning the sentencing of Michael Downes. I have known Michael Downes for the last twelve or thirteen years and he has been my best friend for the last decade.

I am writing to ask the court consider a minimum sentence in this matter for the following reasons:

**Michael Downes is a good person and a productive citizen**

Michael has always gone out of his way to be kind, selfless and responsible. It is a very telling of Michael's character and conduct that even after he disclosed the nature of his offense to his friends, family, coworkers, supervisors and acquaintances, they have all remained supportive of Michael.

Except for the actions that have brought Michael before this court, he has lived and continues to live the kind of life that one would expect from an upstanding young man. He completed college, found gainful employment and bought a house by the age of twenty-five. He has never been in any legal trouble before, he votes, he pays his taxes and his bills, and is a valuable member of society.

**Michael has already been significantly punished for his actions, and will continue to be punished for them.**

The Downes family has already been deeply affected, and while the family remains supportive, this has not been an easy time for any of them. The stigma attached to an offense of this sort is not only going to follow Michael, but to his family as well.

Michael's livelihood has been also significantly affected. Michael has had to resign from his job at the Oklahoman, which was a terribly difficult experience for him, and all the more difficult because he had to explain his legal situation to his co-workers, supervisors and editors.

Given the nature of his offense, Michael will be hard pressed to return to a career in photography. Even though his photographic activities have been nothing but above board, it will be difficult for Michael to find an employer willing to look past a criminal offense of this sort. Even if Michael never serves a day in incarceration, his life and his livelihood have been detrimentally affected.

**Imposing a Minimum Punishment is Appropriate in This Case**

Michael has realized his error and taken responsibility for it. No one can argue that Michael has not made a poor decision, but he has done everything in his power to remedy his past actions. He has and will continue to receive counseling. He has and will continue to keep himself out of trouble.

The imposition of a minimum sentence does not reduce the serious nature of Michael's offense. There are better alternatives in this case than incarceration. No one will be any safer if Michael goes to prison. No one will be in any danger if he remains free. I feel very confident in saying that Michael will not engage in similar behavior in the future. Michael's continued rehabilitation efforts would not be furthered by incarceration. The only rationale that incarcerating Michael would serve is that of retribution, and I would submit to this court that Michael has already received adequate punishment for his acts.

Further, incarceration would be unduly harsh on Michael and his family. The Downes family has always been extremely close. The family is already devastated by Michael's current situation and incarceration would be unbearable for them. I do not know if you have met Michael in person, but if and when that happens, it will be apparent that Michael will not fare will in a standard federal prison.

I truly hope that this court would allow Michael another chance. He has done so many things right in his life. Michael Has been a dedicated friend, son, employee and citizen. I can assure that the world would be worse off without Michael Downes in it.

Respectfully Submitted,

Ryan J. Reaves

Clint Roberson
201 S. Creekdale Dr. Apt. 305
Norman, OK 73072
4-28-07

The Honorable Joe Heaton
c/o Robert L. Wyatt
WYATT LAW OFFICE
P.O. Box 1947
Oklahoma City, OK 73101

RE:    Sentencing of Michael Patrick Downes
*United States v. Michael Patrick Downes*, Case No. 07-CR-04-HE

Dear Judge Heaton:

I have known Michael for five years. I met him my freshman year at the University of Oklahoma when I joined his fraternity. He and I got along very well and he became my big brother. He taught me the history of our house and helped me to adjust to the university setting. Michael not only taught me what our fraternity meant, he also was a good friend. After he and I graduated and moved on to the next phases of our lives we still kept in touch.

Recently he told me that he was facing some legal trouble and explained the situation. I am not completely familiar with the specifics of the case; however, I do know Michael's character. I am aware that he has already made strides to address the situation and has expressed to me and others that he wants to learn from his mistakes. I know Michael has been willing to address these issues, and I am more than willing to help him as a friend in any that I can. That is why I am writing regarding Michael's sentencing.

Michael has done a lot for me as a friend in the years that I have known him. When Michael told me what he was facing, I was more than willing to help him anyway that I could. I felt that I owed him as much, because he has always been eager to help me when I needed something. Michael and I immediately got along when we first met, because we had a lot in common. His room became my home away from home as I was learning to adjust to college life. In my first year he helped me understand how to juggle school, commitments to my fraternity, and my day to day life. He was always willing to take time out his schedule to help me when I had problems or questions. Michael was kind enough to even lend his photography expertise when my wife and I needed someone to take our engagement pictures. Michael is also a very dedicated person. He was one of the few people in our fraternity to live in the house for four years, while we were financially in need.

Michael knows that he has made some mistakes, and I know that he is still trying to atone for them. He has strived to change and has sought professional help to address this situation. I know that Michael has been willing to address this problem and has been very open with his friends and family. I believe that Michael knows what he did was wrong. Michael is a great person and a great friend. I believe that through therapy he has

made great strides, and with support from those who love him, he will continue to lead a productive and healthy life.

Michael knows the severity of his actions and has already addressed a need to correct them. He has been understandably reclusive for a while now, but he has expressed that he wants to change and has already made strides to improve himself. I believe that a minimum punishment is the best way to address Michael's actions. He has already put a lot of time and effort into improving his situation. I believe that a stiff punishment, one including jail time, would only hurt Michael's rehabilitation. He has been open about his situation, and his friends and family want to help him in anyway that we can. I appreciate you taking the time to read this letter, and I want to assure you that Michael does know what he has done and with support from the people in his life, he will address his actions and will make something positive out something negative.

Sincerely,

Clint Roberson

April 26, 2007


The Honorable Joe Heaton
c/o Robert L. Wyatt
WYATT LAW OFFICE
P.O. Box 1947
Oklahoma City, OK 73101

     RE: Sentencing of Michael Patrick Downes
      United States v. Michael Patrick Downes, Case No. 07-CR-04-HE

Dear Judge Heaton:

Michael Patrick Downes is my grandson and we have been closely associated all of his
life. He was the first born grandchild in our family and has lived close to his grandparents
through out his life. This has given us the opportunity to watch him grow and mature into
manhood. I am not aware of the details of the case against Michael so I write to you
concerning the sentencing and punishment phase of this trial only.

Michael came up in a loving family and he returned this love in his every action and
deed. Michael is a Christian young man and is devoted to his church, not only in word
but in his actions on behalf of his faith. He has shown his love of people by visiting the
poor and downtrodden, giving material aid and inspirational encouragement. Michael was
a good student in both high school and college He participated in many school activities
and demonstrated his leadership ability. Michael believed in the teachings of the Boy
Scouts and obtained the title of EAGLE SCOUT.

The act under consideration is totally out of character of the Michael I know and love. I
am sure that Michael has a lot to contribute to Society and to his family, if allowed to do
so.  Surely, he and his family have already been punished as this act became known.
Michael has made every effort to correct his life so that he might have the respect of
those who know him .He has been seeking professional help since before the
investigation began and continues to see his psychologist. He appears to have learned
from his mistakes and is making every effort possible not to repeat them. I feel sure that
he will not!

Michael is a young man and has  many productive years ahead of him  It would be a
shame to have this act ruin his chances of success in life.  I feel that Michael should

receive a minimum punishment under the circumstances as I understand them. I hope that you will see fit to temper justice with mercy as you consider the sentence to be given...

Sincerely,

Robert E. Simmons
3309 N. Preston Dr.
Oklahoma City, Oklahoma 73122-1118

# JOHN R. SMALLEY

| | |
|---|---|
| 7020 BASSWOOD CANYON | PHONE  (405) 728-1854 |
| OKLAHOMA CITY, OK  73162 | MOBILE     414-4144 |

April 24, 2007

The Honorable Joe Heaton
c/o Robert L. Wyatt
WYATT LAW OFFICE
P.O. Box 1947
Oklahoma City, OK  73101

> RE:    Sentencing of Michael Patrick Downes
>           United States v. Michael Patrick Downes
>           Case No. 07-CR-04-HE

Dear Judge Heaton:

I am greatly saddened at the necessity of writing this letter.  I am honored that I can stand up for one of the finest young men with whom it has been my pleasure to be closely associated and I assure you that the actions with which he is charge are so very out of characteristic of the Michael I know.  The deepest regret I will ever experience is that no matter how hard I try, this letter will not convey to you an understanding of the Michael Downes I have gotten to know and love over the past 20 plus years.

I was introduced to Michael and his family in 1984 and have remained very close since that time.  My wife is the godmother of one of Michael's sisters and family friend since the 1970s.  I was present for Michael's first communion, his conformation, his award of Eagle Scout badge, and every other honor along the way.  I have watched Michael grow from a sometimes obnoxious brother to his little sisters through the normal trials and honors of high school and college to become a caring, thoughtful young adult who goes out of his way to be a part of his family and a friend.  He is a devout Catholic, and professionally he is a talented, sought-after journalistic photographer.

The specific awards, honors, and achievements are not as significant as my saying "I know Michael" and I wish you knew him as well.  He is an exceptionally caring person and society is better served with him in it.

CONCLUSION
- Michael never, and could never directly harm a child,
- He never inappropriately photographed a minor child,
- He is a contributing member of society,
- At a very young age, he made some very bad decisions,
- He has recognized these as mistakes,
- He sought professional help and corrected his actions on his own, before they were brought to light,
- He is fully repentant.

PERSONAL REFLECTIONS
- If the goal of sentencing is punishment, Michael and his family have suffered beyond anyone's understanding.
- If the goal of sentencing is correction, Michael has corrected his actions, he has repented, and incarceration will not make him a better person.
- If the goal of sentencing is prevention, Michael corrected his actions and is not a threat to repeat his actions.
- If the goal of sentencing is revenge, we are in more need of help than Michael.

Honorable Judge Joe Heaton
April 24, 2007
Page 2 of 2


MY REQUEST

Your Honor… in the publics' passion to protect minor children, there is an understandable intolerance for leniency in punishment.  However, there is also a blind eye to what is the true threat to their minor children. It is my deepest fear that in the broad-brush of the publics passion and intolerance, Michael will be branded the same as the vial child molester that is the target of our intolerance.

I plead with you to consider your judicial discretion to insure that Michael also receives justice.  He is not the person the public fears.

With total respect and reverence,

John R. Smalley

Marilyn H. Smalley
7020 Basswood Canyon Road
Oklahoma City, OK  73162-7209

April 29, 2007

The Honorable Joe Heaton
c/o Robert L. Wyatt
Wyatt Law Office
PO Box 1947
Oklahoma City, OK 73101

RE:   Sentencing of Michael Patrick Downes
       United States v. Michael Patrick Downes, 07-CR-04-HE

Dear Judge Heaton:

My name is Marilyn Smalley and I am a long time friend of the Downes family and have known Michael since he was born. I am the Godmother of one of his sisters. Having known and shared in Michael's life since day one, I am still in disbelief that I'm having to write this letter. The last letter I wrote on Michael's behalf was a personal character reference for the rank of Eagle Scout. But because of my continued belief in the quality and character of Michael Downes, I gladly write this letter in his support. I know Michael has done something for which he is very sorry, has cooperated with authorities, and continues to face this problem through professional counseling, which started before the onset of this investigation.

I could write pages on the qualities of Michael Downes, but having found the 1999 Eagle Scout reference letter, I am including that to show the high caliber of person Michael continues to be today. I wouldn't change a word of that reference letter because I still believe that he is a responsible considerate and sincere human being.  Michael's maternal grandfather was an Air Force pilot during World War II. His grandfather remains active in veteran's activities, including coordination of old squadron reunions. It was his dream to be present for the dedication of the World War II Memorial in Washington, DC.  Michael realized the importance and helped make his dream possible by taking his grandfather to Washington, and making all necessary arrangements. It was a trip his grandfather is still reliving.  His paternal grandmother is confined to a hospital bed set up in her living room. When Michael heard my husband and I were going over to visit these grandparents a few weeks ago, he decided to pick up some pizza and join us for a very memorable visit we all enjoyed!  He often arranges, or rearranges his schedule to run errands and help his grandparents. Michael's positive influence and leadership is apparent in watching his many interactions with both family and friends. His siblings look up to him and seek out his advice on many everyday problems of growing up.

With all this said, I am now asking you to please consider leniency in the judgment and sentencing of Michael Downes.  He continues to suffer for his actions and exhibits the remorse and pain his actions have caused not only him but all of us who love him. With the continued love and support of his family and friends, Michael will have the help he needs to overcome this behavioral problem and to turn his life around. Please allow your decision to enable this to happen.

Sincerely,

Marilyn Henderson Smalley

Marilyn H. Smalley
7020 Basswood Canyon Road
Oklahoma City, OK 73162

June 15, 1999

To Whom It May Concern:

This letter is to serve as a personal character reference for Michael Patrick Downes. I have been a close friend of the Downes family for more than twenty-five years and have known Michael all of his life. I could easily use words as friendly, helpful, trustworthy, and courteous to describe Michael, which all are applicable to this young man, but these would not adequately encompass the special qualities unique to Michael. At a time when many people are questioning the values of today's youth, I maintain a confidence in the future of our society because of the high standards of Michael Downes. I have witnessed Michael in situations where caving in to peer pressure would have been the easier and popular thing to do. Instead, this young man stood up for what he knew was right and what was responsible. One particular incident has often made me wonder what I would have done at such a young and pliable age. An invitation to a New Year's Eve party at the home of one of the most popular students at PCN High School was quite an honor. When, at this unsupervised event, the partygoers raided the parent's liquor cabinet, Michael chose not to participate, drove home some who did, and was home well before the stroke of midnight.

As a frequent guest in the Downes home, I have grown accustomed to the large number of teens that gather in their home regularly. Michael's leadership and positive influence is apparent on teens both younger and older. In this close knit family where sibling rivalry is minimal, Michael's humorous, loving and sometimes intentionally irritating interaction with his sisters and their friends exemplifies the warm family qualities I think make Michael's Eagle Scout potential a reality.

I could easily continue with additional testimonials of Michael's character, but I'm sure other references have pointed out the numerous accomplishments and outstanding attributes of this young man. I will close with the highest recommendation for acceptance as an Eagle Scout.

Sincerely,

Marilyn H. Smalley

Bill Waugh
23060 Lauren Lane
Edmond, OK  73003
April 30, 2007


The Honorable Joe Heaton
c/o Robert L. Wyatt
WYATT LAW OFFICE
P.O. Box 1947
Oklahoma City, OK  73101

      RE: Sentencing of Michael Patrick Downes
        United States v. Michael Patrick Downes,  Case No. 07-CR-HE

Dear Judge Heaton:

      I am writing to let you know I was completely shocked when Michael Downes came into my office to offer his resignation at The Oklahoman, where he served as a part-time photographer for more than four years.  As Assistant Managing Editor/Visuals at The Oklahoman, I have been his supervisor for 3 ½ of  those years and have worked closely with Michael on a daily basis.

      While I do not know the all the details of Michael's offense, I am writing concerning his upcoming sentencing.

      In all my dealings with Michael, he has been a wonderful and kind person, who has performed all his work duties without any difficulty or controversy.  Michael was a pleasure to have as an employee and his conduct was always professional.  Michael often would volunteer to help others; such as helping new journalists learn more about photojournalism through workshops and speaking engagements at schools and universities.  Michael's enthusiasm and helpful style made him a joy to work with.

      Michael's contributions to myself and to his co-workers have been positive and helpful.  Michael's resignation was devastating to him because he has shown incredible growth in his photography and journalism over the past 3 ½ years I have worked with him.  The situation he faces is out of the current character for the Michael Downes I call a friend and colleague.

      When Michael says he has taken positive steps to help federal investigators in his case and has taken positive action in his own healing for his offense, I believe him.  That is the Michael I know.   He has always shown me honesty and has dealt directly to my inquiries or constructive feedback of his work, never shading from tough questions or consequences.  I have no reason to believe Michael will continue to show he accepts his responsibilities and will follow any decision made in his case.   I believe the first phase of healing is admission to the offense and Michael apparently has done so.

 The loss for Michael is a shock to his friends, family and co-workers. But the loss is clearly harder on this young man, who I believe has a good heart and is facing his responsibilities.

I appreciate your leadership in this matter and understand these cases must be very difficult to handle.  I believe Michael Downes to be a good person. You should know this case is sad for all his family and friends, and is completely out of the character of the Michael Downes I know.

Best to you Judge as you preside over this case.

Sincerely,

Bill Waugh

Mr. Tyler David Wear
3827 W. Galveston Pl.
Broken Arrow, OK 74012
April 24, 2007

The Honorable Joe Heaton
c/o Robert L. Wyatt
WYATT LAW OFFICE
P.O. Box 1947
Oklahoma City, OK 73101

RE:   Sentencing of Michael Patrick Downes
*United States v. Michael Patrick Downes*, Case No. 07-CR-04-HE

Dear Judge Heaton:

As a fraternity pledge brother of Michael Downes, I have been privileged to call him one of my closest friends and even a roommate over the past seven years. I have recently been informed of Michael's trial, and although I do not know all of the facts of the case, I hope this letter may be of assistance to you during the sentencing and punishment phase.

Throughout the duration of our friendship, Michael has been a person I truly admire and respect for his compassion, honesty, and trustworthiness. The most significant reason I feel so strongly is that in February of 2004, Michael saved my life by helping to get me to the hospital after I attempted suicide at our fraternity house. He was the only one of my seventy brothers that stayed by my side all night until my parents arrived and I woke up the next morning in my hospital bed. Subsequently, he continued to help me recover from the emotional and psychological problems that I battled by simply listening and being a shoulder for me to cry on. To this day I can count on Michael to be there for me whenever I need him.

While I realize that Michael has committed a very serious crime and it must be punished, I understand that you have been authorized to consider relevant information when choosing an appropriate sentence. I feel very strongly that Michael deserves an extremely lenient punishment and I hope that you find that probation is an appropriate course of action in this specific case. Michael and his family have contributed an enormous amount to their community and to my personal growth and development and I firmly believe that his incarceration would only prevent him from doing more good.

Sincerely,

*[signature]* 4/24/2007

Tyler Wear



## *The University of Oklahoma*

GAYLORD COLLEGE OF JOURNALISM AND MASS COMMUNICATION

April 23, 2007

The Honorable Joe Heaton
c/o Robert L. Wyatt
Wyatt Law Office
P.O. Box 1947
Oklahoma City, OK 73101

RE:   Sentencing of Michael Patrick Downes
      United States v. Michael Patrick Downes, Case No. 07-CR-04-HE

Dear Judge Heaton:

As do all of Michael's friends and family members, I know, I write this letter with a heart full of sadness for him and his family. However, my heart is also full of hope that the compassion and mercy of our justice system at its best will prevail in his sentencing. Although any concept of child sexual abuse is abhorrent — and I understand that the courts have made their decision concerning Michael's guilt — I ask for that ideal of mercy and compassion in his sentencing.

I have known Michael for almost 10 years as, first, teacher and faculty adviser to the OU yearbook on which he served as a photographer, and, second, as friend. In those years, I have asked him to volunteer to help me with a variety of educational events given his skill as a professional photographer. He has always responded. I have seen him reach out with kindness and concern to friends and strive to be the best man he could be. That he has made grave mistakes we all understand. He is, though, I know, a redeemable human being who can, with guidance and help, function as a positive member of society.

I am the mother of a 21-year-old son. I cannot imagine the grief and suffering of Michael's parents, but Michael knows that deeply. I know from talking to him that he feels their pain as powerfully as he feels his own. In fact, he began and ended the difficult conversation in which he called to tell me his situation with an apology to them, to me, to all who have loved and trusted him and to those unknown to him he may have unintentionally harmed. In talking to him, I came to understand not necessarily his actions but that he regrets them beyond measure and not just because they had landed him in his current position. Michael understands his responsibility — however tangential — in an area of behavior no society can tolerate. He is deeply remorseful and determined to accept his punishment, seek help and try to reclaim his life. In addition, he wants desperately to make amends to those he has hurt.

I ask that you consider meting out to Michael the minimum punishment, which — combined with rehabilitation and counseling — offers Michael a chance at redemption. A lighter sentence does not suggest that the moral weight of his behavior is any the less. Instead, it says only that in bestowing mercy on one person we help not only him but also ourselves as a culture rooted in such a value.  Thank you, Judge Heaton, for reading this and considering my letter as you decide Michael's future, that of a good man who has made a serious mistake.

Sincerely,

Kathryn Jenson White
Assistant Professor of Journalism

395 W. Lindsey St. Rm. 3000
Norman, OK 73019

Kellen Wiggins
2929 Kings Road, #2206
Dallas, TX 75219

April 27, 2007

The Honorable Joe Heaton
c/o Robert L. Wyatt
WYATT LAW OFFICE
P.O. Box 1947
Oklahoma City, OK 73101

> RE:   Sentencing of Michael Patrick Downes
> *United States v. Michael Patrick Downes*, Case No. 07-CR-04-HE

Dear Judge Heaton:

My name is Kellen Wiggins and I am writing concerning my friend Michael Downes, whom I have known for more than three years. I understand that he has pled guilty to one count of possession of child pornography. Although I admittedly do not know the intricate details surrounding the case, I would like to take some time to speak on his behalf.

For as long as I have known Michael, he has been the embodiment of strong morals and values. His name has always been associated with honesty, loyalty, ethics, kindness, fairness and friendship. He has always led by example and has earned the respect of everyone in his life, including myself. Michael has always been active and involved in his community. From his fraternity at the University of Oklahoma to his long-time job as a photojournalist at *The Oklahoman*, he has consistently taken steps to make the world around him a better place. Michael is likely the most responsible 25-year-old I know: he has owned his own house for nearly the entire time we have been friends and has already had an impressive career with the state's largest newspaper. He has always been an outspoken advocate of life in Oklahoma and has dedicated himself to its improvement. The past two years have no doubt been the most difficult of his life to date and I cannot begin to fathom what he has gone through or what he is currently facing. I honestly cannot imagine my good friend having committed the crime for which he will be punished. I understand that he has been through extensive therapy to determine and remove the problem in his life which caused his misbehavior.

I am fully aware that Michael has broken the law and understand that these actions do merit consequences. However, I fully believe that the law that Michael has broken and the accompanying consequences that he faces were written to punish aggressive and dangerous pedophiles. That law is meant to protect children from those who would harm them. I can say with absolute confidence that Michael Downes is not, has never been and never will be the kind of person who would even consider such things. I do not believe

that he sexualizes children anywhere in his mind.  He has never been and could never be a threat to another human being, much less a child.  He is absolutely not the kind of person that this law was designed to punish.  For this reason, I implore you to consider a minimal sentence for him.  I am certain that Michael has been through his own personal hell in the past two years, trying to deal with the ramifications of his misdeed.  I know that he and his family have both suffered greatly and I am absolutely certain that Michael will never repeat this offense for any reason whatsoever.  Thank you so much for your time and consideration.

Sincerely,


Kellen Wiggins

**Jerry L. and Nancy R. Williams**
**2917 Drakestone Ave.**
**Oklahoma City, OK 73120**

April 30, 2007

The Honorable Joe Heaton
c/o Robert L. Wyatt
WYATT LAW OFFICE
P.O. Box 1947
Oklahoma City, OK 73101

   RE: Sentencing of Michael Patrick Downes
    *United States v. Michael Patrick Downes,* Case No. 07-CR-04-HE

Dear Judge Heaton:

   We have had the distinct pleasure of knowing Michael Downes from the day he was born.   We have known Michael's parents for over 35 years and lived across the street from Michael for approximately 12 years.  Our families have spent weekends, holidays, and family vacations together.   Michael Downes has been almost like a son to us.  We acknowledge we may not have all the facts or details of the case against Michael, but we are writing this letter concerning the sentencing and punishment phase of the trial.

   Michael Downes is one of the most kind, compassionate and caring individual we know.  Michael was a leader in high school and served as student council officer. Michael worked hundreds of hours for functions benefiting the American Cancer Society. He was nominated by the entire student body and faculty based upon his outstanding character for the highest award given to a Putnam City North High School senior. Michael also worked tirelessly to achieve the rank of Eagle Scout.  We have witnessed first-hand the hours upon hours Michael has spent caring for his aging grandparents and great aunt.  On a personal note, when I was confined to bed after back surgery, Michael called me several times when he knew I was alone and asked me if I needed anything. All of these instances were done "Michael's way"….caring, quietly and unassuming.

   We have seen the toll this event has taken not only on Michael but his family. Michael is completely devastated for what he has done not only to himself but also to his family.  I can assure you he has been amply punished for his actions.   This act was completely and totally out of character for Michael.  Michael has tremendous potential to make this world a better place.  He is a good person who gives of himself to others. Michael is not a threat to society, and he has learned a great lesson from this ordeal.

The Honorable Joe Heaton
United States v. Michael Patrick Downes
April 30, 2007
Page Two


      Judge Heaton, it is our understanding that you may have some discretion in the sentencing of Michael Downes.  Based upon the facts and circumstances as we understand them, we believe a bare minimum punishment would be warranted.  Michael Downes has cooperated fully with the authorities and has acknowledged he made a gross error in judgment.  We respectfully respect and moreover we beg you to show mercy and leniency to him.  Please do not send Michael to prison as he and his family have suffered enough.  Please consider this request carefully as we believe Michael Downes is most deserving of a second chance in life.

Sincerely,

Jerry L. Williams

Nancy R. Williams

## Price, William S.

| | |
|---|---|
| **From:** | Bill Brown [brown337@sbcglobal.net] |
| **Sent:** | Friday, May 18, 2007 3:40 PM |
| **To:** | Price, William S. |
| **Subject:** | Michael Downes |

To:  The Honorable JOE HEATON
     % ROBERT L. WYATT, Esq.
     P. O. Box 1947
     Oklahoma City, Oklahoma 73101

Sir:
     This letter is in reference to a polygraph examination I conducted of MICHAEL DOWNES on July 24, 2006.  A copy of the report reflecting the results of that examination was forwarded to Attorney WILLIAM S. PRICE.  The examinee was asked questions as to whether he had sex with anyone under the age of sixteen since his own (DOWN'S) eighteenth birthday, and whether he had solicited pornographic images of pre-pubescent children since being contacted by Customs Agents, and/or whether he had ever sought photos of pre-pubescent children for his own sexual gratification.  It is this examiner's opinion, supported by the two scoring algorithms of the Axciton computerized polygraph instrument with which the examination was conducted, that DOWNES' was not practicing deception in his responses to relevant questions asked of him on two series administered to him.

                        Respectfully submitted,
                        Bill D. Brown, Polygraph Examiner